1   BAKER BOTTS LLP
    David A. Super (admitted pro hac vice)
2   *david.super@bakerbotts.com*
    Ryan E. Bull (admitted pro hac vice)
3   *ryan.bull@bakerbotts.com*
    Stephen M. Ng (admitted pro hac vice)
4   *stephen.ng@bakerbotts.com*
    The Warner
5   1299 Pennsylvania Avenue, NW
    Washington, DC 20004
6   Telephone: (202) 639-7700
    Facsimile: (202) 639-7890
7
8   SCHIFF HARDIN LLP
    Jean L. Bertrand (CSN 83250)
9   *bertrand@schiffhardin.com*
    C. Craig Bridwell (CSN 246124)
    *cbridwell@schiffhardin.com*
10  One Market, Spear Street Tower
    Thirty-Second Floor
11  San Francisco, CA  94105
    Telephone: (415) 901-8700
12  Facsimile: (415) 901-8701

13
    Attorneys for Defendant Federal Deposit
14  Insurance Corporation, as Receiver for
    Washington Mutual Bank
15
                **UNITED STATES DISTRICT COURT**
16
               **NORTHERN DISTRICT OF CALIFORNIA**
17
                  **SAN FRANCISCO DIVISION**
18

| | |
|---|---|
| 19  STANLEY G. HILTON, | CASE NO.  3:09-cv-01191 SI |
| Plaintiff, | **NOTICE OF MOTION AND MOTION OF** |
| 20  v. | **FDIC-RECEIVER FOR JUDGMENT ON** |
| | **THE PLEADINGS** |
| 21  WASHINGTON MUTUAL BANK; | |
| LONG BEACH MORTGAGE CO., a | Hearing |
| 22  California Corporation; FIDELITY TITLE | Date: October 30, 2009 |
| COMPANY, a California Corporation; | Time: 9:00 a.m. |
| 23  FIRST AMERICAN TITLE COMPANY, a | Courtroom: 10, 19th Floor |
| California corporation; APPRAISERS A | |
| 24  and B; and DOES 1 through 500, inclusive, | |
| | Judge Susan Illston |
| 25  Defendants. | |
| | [Memorandum of Law, Request for Judicial |
| 26 | Notice, Declaration of Stephen M. Ng, and |
| | [Proposed] Order lodged concurrently] |
| 27 | |
| 28 | |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on Friday, October 30, 2009, at 9:00 a.m., in Courtroom 10, 19th Floor of the above-captioned Court located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank ("FDIC-Receiver"), will and hereby does move the court for an order granting FDIC-Receiver judgment on the pleadings and dismissing, with prejudice, the claims alleged against FDIC-Receiver in Plaintiff Stanley G. Hilton's Second Amended Complaint.[1]

As detailed in the attached Memorandum of Law, FDIC-Receiver should be granted judgment on the pleadings. First, with the exception of Plaintiff's seventh cause of action, all of Hilton's causes of action are barred by 12 U.S.C. § 1823(e) (2009) because they are based on unrecorded, oral misrepresentations. Second, those same causes of action are preempted by the Home Owners' Loan Act ("HOLA") and its implementing regulations because Hilton seeks to apply California common law to regulate the lending operations of a federal savings association. Third, each of Hilton's causes of action fails to state a claim upon which relief can be granted. Finally, Hilton seeks remedies against FDIC-Receiver that have been prohibited by the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA").

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Law, the accompanying Request for Judicial Notice and Declaration of Stephen M. Ng, and such other materials or arguments as the Court, in its discretion, may consider.

---

[1] Also pending before the Court are Defendant First American Title Company's motion to dismiss (Dkt. No. 37) and Defendant Fidelity Title Company's motion to dismiss (Dkt. No. 42). These motions are also scheduled to be heard on October 30, 2009. Also pending before the Court is the Amendment to Complaint Substituting True Names of Defendants for Fictitious Names filed by Hilton on June 26, 2009. See Dkt. No. 27. FDIC-Receiver has been informed by Hilton that this document was filed in error and will be withdrawn.

1

2

3      DATED: September 25, 2009

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

*s/ Stephen M. Ng*
David A. Super (admitted pro hac vice)
Ryan E. Bull (admitted pro hac vice)
Stephen M. Ng (admitted pro hac vice)
BAKER BOTTS L.L.P.
The Warner
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

Jean L. Bertrand
C. Craig Bridwell
SCHIFF HARDIN LLP
One Market, Spear Street Tower
Thirty-Second Floor
San Francisco, CA  94105

*Attorneys for Defendant Federal Deposit*
*Insurance Corporation, as Receiver for*
*Washington Mutual Bank*

- 3 -

1    BAKER BOTTS LLP
      David A. Super (admitted pro hac vice)
2    *david.super@bakerbotts.com*
      Ryan E. Bull (admitted pro hac vice)
3    *ryan.bull@bakerbotts.com*
      Stephen M. Ng (admitted pro hac vice)
4    *stephen.ng@bakerbotts.com*
      The Warner
5    1299 Pennsylvania Avenue, NW
      Washington, DC 20004
6    Telephone: (202) 639-7700
      Facsimile: (202) 639-7890
7

8    SCHIFF HARDIN LLP
      Jean L. Bertrand (CSN 83250)
      *bertrand@schiffhardin.com*
9    C. Craig Bridwell (CSN 246124)
      *cbridwell@schiffhardin.com*
10    One Market, Spear Street Tower
      Thirty-Second Floor
11    San Francisco, CA 94105
      Telephone: (415) 901-8700
12    Facsimile: (415) 901-8701

13

14    Attorneys for Defendant Federal Deposit
      Insurance Corporation, as Receiver for
      Washington Mutual Bank
15

16             **UNITED STATES DISTRICT COURT**

17           **NORTHERN DISTRICT OF CALIFORNIA**

18              **SAN FRANCISCO DIVISION**

19    STANLEY G. HILTON,            CASE NO. 3:09-cv-01191 SI

20             Plaintiff,         FDIC-RECEIVER'S MEMORANDUM OF
      v.                             LAW IN SUPPORT OF MOTION FOR
21                                    JUDGMENT ON THE PLEADINGS
      WASHINGTON MUTUAL BANK;
22    LONG BEACH MORTGAGE CO., a
      California Corporation; FIDELITY TITLE     Hearing
23    COMPANY, a California Corporation;        Date: October 30, 2009
      FIRST AMERICAN TITLE COMPANY, a     Time: 9:00 a.m.
24    California corporation; APPRAISERS A      Courtroom: 10, 19th Floor
      and B; and DOES 1 through 500, inclusive,
25                                        Judge Susan Illston
                    Defendants.
26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................... 1

II.   BACKGROUND ...................................................................................................... 2

III.  ARGUMENT ........................................................................................................... 4

    A.    Hilton's Claims Based On Alleged Oral Misrepresentations Are Barred Under 12 U.S.C. § 1823(e). ............................................................................................ 5

    B.    Hilton's State Law Claims Are Preempted Because He Seeks To Apply California Common Law To Regulate The Lending Operations Of A Federal Savings Association. ................................................................................................. 8

        1.    Congress has granted the OTS exclusive authority to regulate the lending operations of federal savings associations. ........................................ 8

        2.    The OTS has completely occupied the field of lending regulations applicable to the operations of federal savings associations. ........................... 8

        3.    Hilton's state law claims are preempted. ...................................................... 11

    C.    Hilton's Claims Must Be Dismissed Because They Fail To State A Claim On Which Relief May Be Granted. ......................................................................... 14

        1.    First cause of action: Fraud. ......................................................................... 14

        2.    Second cause of action: Breach of contract. ................................................. 15

        3.    Third cause of action: Breach of duty and covenant of good faith and fair dealing. ................................................................................................... 15

        4.    Fourth cause of action: Breach of fiduciary duty. ......................................... 16

        5.    Fifth cause of action: Wrongful and bad faith attempted foreclosure. ............. 17

        6.    Sixth cause of action: Slander of title and suit to quiet title. .......................... 18

        7.    Sixth cause of action: For declaratory relief. ................................................. 19

        8.    Seventh cause of action: For willful violation of January 18 Order. .............. 19

        9.    Eighth cause of action: Defamation: libel and slander. .................................. 19

    D.    Hilton's Requests For Punitive Damages and Sanctions, Injunctive And Declaratory Relief, Rescission, Quiet Title, And Attorneys' Fees Are Prohibited By Federal Law. .................................................................................................. 20

        1.    Hilton is precluded from obtaining punitive damages or sanctions against FDIC-Receiver. ................................................................................. 20

i

2.      Hilton's requests for injunctive and declaratory relief, rescission, and quiet title are precluded by 12 U.S.C. § 1821(j). ........................................... 22

3.      Hilton cannot recover attorneys' fees against FDIC-Receiver. ..................... 24

IV.     CONCLUSION ................................................................................................. 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

C<span style="font-variant:small-caps">ASES</span>

4

Alicea v. GE Money Bank,
   No. C 09-00091 SBA, 2009 WL 2136969 (N.D. Cal. July 16, 2009) .................................. 18

5

Andrade v. Wachovia Mortgage,FSB,
6
   No. 09 CV 0377 JM (WMc), 2009 WL 11111182 (S.D. Cal. Apr. 21, 2009)............. 8, 11, 14

7

Ayala v. World Sav. Bank, FSB,
8
   616 F. Supp. 2d. 1007 (C.D. Cal. 2009)........................................................................... 8, 11

9

Bank One, Tex., N.A. v. Taylor,
   970 F.2d 16 (5th Cir. 1992)..................................................................................................... 21

10

Baumann v. Savers Fed. Sav. & Loan Ass'n,
11
   934 F.2d 1506 (11th Cir. 1991)................................................................................................ 6

12

Bell Atlantic v. Twombly,
13
   550 U.S. 544, 127 S. Ct. 1955 (2007)............................................................................ 2, 4, 5

14

Berger v. Home Depot U.S.A., Inc.,
   476 F. Supp. 2d 1174 (C.D. Cal. 2007)................................................................................... 17

15

Blalock v. United States,
16
   844 F.2d 1546 (11th Cir. 1988) (per curiam).......................................................................... 20

17

Brookside Assocs. v. Rifkin,
   49 F.3d 490 (9th Cir. 1995).......................................................................................................7

18

Caira v. Offner,
19
   126 Cal. App. 4th 12, 24 Cal. Rptr. 3d 233 (2005)................................................................. 24

20

California v. Grace Brethren Church,
21
   457 U.S. 393, 102 S. Ct. 2498 (1982)..................................................................................... 24

22

Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.,
   2 Cal. 4th 342 826 P.2d 710 (1992) ....................................................................................... 16

23

Cedeno v. IndyMac Bancorp, Inc.,
24
   No. 06 Civ. 6438(JGK), 2008 WL 3992304 (S.D.N.Y. 2008) .............................................. 14

25

City of Newport v. Fact Concerts, Inc.,
26
   453 U.S. 247, 101 S. Ct. 2748 (1981)..................................................................................... 22

27

28

i

Connors v. Home Loan Corp.,
    08 Civ. 1134-L(LSP), 2008 WL 5214124 (S.D. Cal. Dec. 11, 2008) ................................... 17

D. Patrick, Inc. v. Ford Motor Co.,
    8 F.3d 455 (7th Cir. 1993) ................................................................................................ 20

D'Oench, Duhme & Co., Inc. v. FDIC,
    315 U.S. 447, 62 S. Ct. 676 (1942) ............................................................................. 5, 6, 7

Donovan v. Sureway Cleaners,
    656 F.2d 1368 (9th Cir. 1981) ........................................................................................... 20

Edwards v. Marin Park, Inc.,
    356 F.3d 1058 (9th Cir. 2004) ........................................................................................... 14

Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.,
    132 F.3d 526 (9th Cir. 1997) ............................................................................................... 4

FDIC v. Claycomb,
    945 F.2d 853 (5th Cir. 1991) ............................................................................................. 22

FDIC v. Southwest Motor Coach Corp.,
    780 F. Supp. 421 (N.D. Tex. 1991) ................................................................................... 21

Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,
    458 U.S. 141 102 S. Ct. 3014 (1982) ......................................................................... 1, 8, 9

First Fed. Sav. & Loan Ass'n v. Mass. Tax Comm'n,
    437 U.S. 255, 98 S. Ct. 2333 (1978) ................................................................................... 9

Flick v. Borg-Warner Corp.,
    892 F.2d 285 (3d Cir. 1989) .............................................................................................. 22

Freeman v. FDIC,
    56 F.3d 1394 (D.C. Cir. 1995) ..................................................................................... 23, 24

Glendale Fed. Sav. & Loan Ass'n v. Fox,
    459 F. Supp. 903 (C.D. Cal. 1978) ..................................................................................... 8

Haehl v. Wash. Mut. Bank, F.A.,
    277 F. Supp. 2d 933 (S.D. Ind. 2003) ......................................................................... 12, 13

Hal Roach Studios v. Richard Feiner and Co., Inc.,
    896 F.2d 1542 (9th Cir. 1989) ............................................................................................. 4

Howard v. Schaniel,
    113 Cal. App. 3d 256, 169 Cal. Rptr. 678 (1980) .............................................................. 19

ii

*In re Sterten*,
546 F.3d 278 (3d Cir. 2008) ............................................................. 25

*Interfirst Bank-Abilene, N.A. v. FDIC*,
777 F.2d 1092 (5th Cir. 1985) .......................................................... 25

*Jones v. Thyssenkrupp Elevator Corp.*,
No. C-05-3539 EMC, 2006 WL 680553 (N.D. Cal. Mar. 14, 2006) ..................................... 20

*Karlsen v. Am. Sav. & Loan Ass'n*,
15 Cal. App. 3d 112, 92 Cal. Rptr. 851 (1971) ....................................... 18

*Kelley v. Mortgage Electronic Registration Systems, Inc.*,
No. C 09-01538 SI, 2009 WL 2475703 (N.D. Cal. Aug. 12, 2009) ........................... 11, 12, 14

*Ludahl v. Seaview Boat Yard*,
869 F. Supp. 825 (W.D. Wash. 1994) .................................................. 4

*Mangindin v. Wash. Mut. Bank*,
No. C 09-01268 JW, 2009 WL 1766601 (N.D. Cal. June 18, 2009) ......................... 19

*Manhattan Loft, LLC v. Mercury Liquors, Inc.*,
173 Cal. App. 4th 1040, 93 Cal. Rptr. 3d 457 (2009) ............................... 19

*McGlinchy v. Shell Chem. Co.*,
845 F.2d 802 (9th Cir. 1988) ........................................................... 4

*Missouri Pac. R.R. Co. v. Ault*,
256 U.S. 554, 41 S. Ct. 593 (1921) .................................................. 21

*Monrad v. FDIC*,
62 F.3d 1169 (9th Cir. 1995) .......................................................... 21

*Munoz v. Fin. Freedom Senior Funding Corp.*,
567 F. Supp. 2d 1156 (C.D. Cal. 2008) ............................................... 11

*Munoz v. Fin. Freedom Senior Funding Corp.*,
573 F. Supp. 2d 1275 (C.D. Cal. 2008) ............................................... 13

*Nymark v. Heart Fed. Sav. & Loan Ass'n.*,
231 Cal. App. 3d 1089, 283 Cal. Rptr. 53 (1991) ............................... 17, 18

*OPS Shopping Ctr., Inc. v. FDIC*,
992 F.2d 306 (11th Cir. 1993) ........................................................ 6

*Otworth v. Southern Pac. Transp. Co.*,
166 Cal. App. 3d 452 212 Cal. Rptr. 743 (1985) .................................... 16

iii

Pellegrini v. Weiss,
165 Cal. App. 4th 515, 81 Cal. Rptr. 3d 387 (2008) ............................................. 17

Price v. Wells Fargo Bank,
213 Cal. App. 3d 465, 261 Cal. Rptr. 735 (1989) ..................................................... 17

Racine & Laramie, Ltd., v. Dept. of Parks & Recreation,
11 Cal. App. 4th 1026, 14 Cal. Rptr. 2d 335 (1992) ............................................... 16

RTC v. Kennelly,
57 F.3d 819 (9th Cir. 1995) (per curiam) ................................................................ 7

Sahni v. American Diversified Partners,
83 F.3d 1054 (9th Cir. 1996) ........................................................................... 23, 24

Silvas v. E*Trade Mortgage Corp.,
514 F.3d 1001 (9th Cir. 2008) ........................................................ 8, 10, 11, 12, 13

Spears v. Wash. Mut., Inc.,
No. C-08-00868 RMW, 2009 WL 605835 (N.D. Cal. Mar. 9, 2009) ..................... 14

Suckow Borax Mines Consol. v. Borax Consol.,
185 F.2d 196 (9th Cir. 1950) ................................................................................. 15

Tillman v. RTC,
37 F.3d 1032 (4th Cir. 1994) ................................................................................. 23

U.S. ex rel. White v. Knox,
111 U.S. 784, 4 S. Ct. 686 (1884) .......................................................................... 25

Vega v. JPMorgan Chase, N.A.,
No. CV F 09-1444 LJO GSA, 2009 WL 2731039 (E.D. Cal. Aug. 26, 2009) ....... 18

Volges v. RTC,
32 F.3d 50 (2d Cir. 1994) ....................................................................................... 23

W.T. Langley v. FDIC,
484 U.S. 86, 108 S. Ct. 396 (1987) ...................................................................... 6, 7

**STATUTES**

Cal. Civ. Proc. Code § 338(d)(2007) ........................................................................ 15

Cal. Civ. Proc. Code § 761.020 (2009) ..................................................................... 19

Federal Deposit Insurance Act of 1950, § 2[13](e), 64 Stat. 889 ............................... 5

iv

Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 (1989) ("FIRREA") .............................................................. *passim*

Home Owners' Loan Act of 1933 ("HOLA"), 48 Stat. 128, 12 U.S.C. § 1461 <u>et</u> <u>seq</u> .......... *passim*

**OTHER AUTHORITIES**

12 C.F.R. § 560.2 ............................................................................................ *passim*

61 Fed. Reg. 50951, 50965 (Sept. 30, 1996) ........................................................ 9, 10

<u>Black's Law Dictionary</u> 1168 (8th ed. 2004) .......................................................... 21

Federal Rule of Civil Procedure 9 .......................................................................... 14

Federal Rule of Civil Procedure 12 ...................................................................... 1, 4

Miller & Starr, <u>California Real Estate</u>, §§ 1493-1495 (3d ed. 1989) ............................ 18

v

Pursuant to Federal Rule of Civil Procedure 12(c), Defendant Federal Deposit Insurance Corporation, in its capacity as Receiver for Washington Mutual Bank ("FDIC-Receiver"), submits this Memorandum of Law in Support of its Motion for Judgment on the Pleadings.

## I.  INTRODUCTION

In his Second Amended Complaint ("SAC"), Stanley G. Hilton ("Hilton") alleges that Washington Mutual Bank ("WMB") violated California common law and an order of a California state court.  The SAC must be dismissed, as a matter of law, because each of the nine causes of action either (1) relies on oral misrepresentations which cannot be asserted against FDIC-Receiver pursuant to 12 U.S.C. § 1823(e) (2009); (2) relies on state law that has been preempted by federal law; (3) fails to state a claim upon which relief can be granted; or (4) requests relief that cannot be awarded against FDIC-Receiver as a matter of law.

First, with the exception of the seventh cause of action, all causes of action are based on alleged oral misrepresentations and thus cannot be asserted against FDIC-Receiver pursuant to 12 U.S.C. § 1823(e).  Section 1823(e) provides that no agreement which tends to diminish the interest of the FDIC in an asset acquired from a closed bank is enforceable against FDIC unless the agreement, inter alia, is reflected by a writing executed by the parties contemporaneously with the financial institution's acquisition of the loan at issue.  See 12 U.S.C. § 1823(e).

Second, with the exception of his seventh cause of action, all of Hilton's causes of action seek to apply California common law to regulate the lending operations of a federal savings association and thus are preempted by the Home Owners' Loan Act of 1933 ("HOLA"), 48 Stat. 128, as amended, 12 U.S.C. § 1461 et seq.  Through HOLA, Congress vested the Office of Thrift Supervision ("OTS") with exclusive authority to regulate the operations of every federally chartered savings association "from its cradle to its corporate grave."  Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 145 102 S. Ct. 3014, 3018 (1982) (internal quotation marks omitted).  To the extent that any state law, whether directly or as applied, purports to regulate the operations of a federally chartered savings institution, that law is preempted by HOLA and the OTS's regulations.  Hilton seeks to use California law to regulate the lending operations of

- 1 -

WMB.   As a consequence, his state law claims are preempted by HOLA and the OTS's regulations and must be dismissed.

Third, Hilton's claims must be dismissed because each fails to state a claim upon which relief may be granted.  Hilton consistently fails to allege even the elements of his asserted causes of action, let alone facts sufficient to survive a motion for judgment on the pleadings under the standard established by the Supreme Court in Bell Atlantic v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007).

Finally, certain forms of relief requested by Hilton, including his request for punitive damages and sanctions, injunctive and declaratory relief, rescission, quiet title, and attorneys' fees, may not be awarded against FDIC-Receiver as a matter of law, pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 (1989) ("FIRREA").  Accordingly, should any of Hilton's claims survive dismissal, his requests for these forms of relief must be dismissed as a matter of law.[2]

## II.   BACKGROUND

On January 16, 2008, Hilton filed his complaint against WMB, Long Beach Mortgage Company, Fidelity Title Company, First American Title Company, Appraisers A and B, and Does 1 through 500 in Case No. CGC-08-471131 in the Superior Court of California, County of San Francisco (the "State Court").  Hilton's allegations pertain to mortgages on two real properties: the San Francisco and Hillsborough properties or mortgages, respectively.  Hilton alleges that Defendants fraudulently induced him into signing mortgages on these two properties and that he is now facing a potential default on his loans and the sale of his homes in foreclosure.

---

[2] In a recent filing, Hilton implied that he is not only asserting claims on his own behalf, but also as a representative of a class of similarly situated persons.  See Dkt. No. 47.  Hilton's SAC, however, only contains one vague reference to "then [sic] entire class of plaintiffs in this class action," see SAC at 11, ¶ 15, and there are no allegations about the nature of the class, why class relief should be granted, or even a request that a class be certified.  Thus, to the extent Hilton is seeking class certification, his pleadings are wholly deficient.  However, because Hilton cannot currently represent a class of plaintiffs due to his inactive status with the State Bar of California and because the Court has determined that it will reassess the issue of representation of the proposed class after ruling on the pending motions to dismiss, see Dkt. No. 49, FDIC-Receiver will defer challenges to Hilton's putative class claims pending resolution of this motion for judgment on the pleadings.

On January 18, 2008, the State Court issued an Order to Show Cause and Temporary Restraining Order ("January 18 Order").  The January 18 Order restrained and enjoined Defendants WMB and Long Beach Mortgage Company from "issuing and recording with county recorders a 'Notice of Default' on the two loans nos. 0729334821 and 74432360, and from foreclosing, selling, attempting to sell, or causing to be sold, theorist [sic] properties described in the complaint on file in this action either under the power of sale nin [sic] the deeds of trust or by foreclosure action, and enjoining defendants from engaging in any further collection action against plaintiff on these two mortgage loans."  Further, the January 18 Order specifically applies to Defendants' "agents, officers, employees, partners, investors, successors, and representatives" as well as to "all persons acting in concert or participating with them."  The State Court extended the January 18 Order on multiple occasions and it remains in force today.

Hilton amended his complaint on February 15, 2008 (attached as Exhibit A to the Request for Judicial Notice ("RJN")), and filed the SAC on September 17, 2008 (attached as Exhibit B to the RJN).[3]  In the SAC, Hilton asserts claims for (i) fraud, (ii) breach of contract, (iii) breach of the duty and covenant of good faith and fair dealing, (iv) breach of fiduciary duty, (v) wrongful and bad faith attempted foreclosure, (vi) slander of title and suit to quiet title, (vii) declaratory relief, (viii) violation of the January 18 Order, and (ix) defamation.

On September 25, 2008, the OTS closed WMB and appointed the FDIC as Receiver for WMB.  On November 21, 2008, FDIC-Receiver filed a notice in the State Court, substituting itself for WMB as the proper defendant in this action, which the State Court granted on February 26, 2009.  On January 6, 2009, Hilton submitted an administrative claim with FDIC-Receiver in the mandatory administrative claims process set forth in FIRREA.  On March 18, 2009, FDIC-

---

[3] WMB filed an answer to Hilton's first amended complaint on February 15, 2008, and an amended answer on March 21, 2008 (attached as Exhibit C to the RJN.).  Because WMB did not answer Hilton's SAC, which is substantially the same as his first amended complaint, this amended answer serves as WMB/FDIC-Receiver's answer to Hilton's SAC.  See Carrasco v. Craft, 164 Cal. App. 3d 796, 809, 210 Cal. Rptr. 599, 607 (1985) (quoting Gray v. Hall, 203 Cal. 306, 313 (1928)) ("[W]hen a complaint is amended after answer, the defendant is not bound to answer de novo.  He may do so if he chooses; but, if he does not elect to do so, his original answer stands as his answer to the amended complaint . . . .").  Thus because WMB/FDIC-Receiver has previously answered Hilton's SAC, this motion is presented as a motion for judgment on the pleadings rather than a motion to dismiss for failure to state a claim.

- 3 -

Receiver removed the action to this Court.  On May 15, 2009, this Court granted FDIC-Receiver's motion to stay this case until the earlier of July 5, 2009, or the date on which the Receiver made a determination on Hilton's administrative claim.  See Dkt. No. 24.  By letter dated June 23, 2009, FDIC-Receiver informed Hilton that his administrative claim was denied.

## III.   ARGUMENT

Under Federal Rule of Civil Procedure 12(c), judgment on the pleadings is proper if the moving party "clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that [the moving party] is entitled to judgment as a matter of law." Hal Roach Studios v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989).  Where, as here, the motion for judgment on the pleadings is used to raise the defense of failure to state a claim, the motion is governed by the standards used to assess the sufficiency of the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988); Ludahl v. Seaview Boat Yard, 869 F. Supp. 825, 826 (W.D. Wash. 1994); see also Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., 132 F.3d 526, 528 (9th Cir. 1997) ("A judgment on the pleadings is properly granted when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law.") (citation and internal quotations omitted).  To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face" and which raises "a right to relief above the speculative level."  Twombly, 550 U.S. at 547, 545, 555, 127 S. Ct. 1960, 1959.   A plaintiff's obligation under this standard "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  Id. 555 U.S. at 545, 127 S. Ct. at 1959.

The SAC should be dismissed in its entirety because all of Hilton's claims are either barred by 12 U.S.C. § 1823(e), preempted by HOLA and its implementing regulations, or fail to assert sufficient allegations to satisfy the standard established in Twombly.   Additionally, Hilton's requests for punitive damages and sanctions, injunctive and declaratory relief, rescission, quiet title, and attorneys' fees must be denied as a matter of law, pursuant to FIRREA.

- 4 -

**A.**     **Hilton's Claims Based On Alleged Oral Misrepresentations Are Barred Under 12 U.S.C. § 1823(e).**

With the exception of his seventh cause of action, each of Hilton's causes of action is based on alleged oral misrepresentations and are thus barred by 12 U.S.C. § 1823(e).  In D'Oench, Duhme & Co., Inc. v. FDIC, 315 U.S. 447, 459, 62 S. Ct. 676, 680 (1942), the U.S. Supreme Court held that as a matter of law, borrowers of FDIC-insured financial institutions are barred from relying on oral or secret side agreements with the financial institution that are not reflected on the institution's books and may therefore mislead bank examiners concerning the value of the written loan obligations.  The Court based its ruling on the "federal policy to protect [FDIC], and the public funds which it administers against misrepresentation as to the securities or other assets in the portfolios of the banks which [it] insures or to which it makes loans."  Id. 315 U.S. at 457, 62 S. Ct. at 679.

In 1950, Congress codified a statutory complement to the D'Oench doctrine as part of the Federal Deposit Insurance Act of 1950, § 2[13](e), 64 Stat. 889, and as amended, 12 U.S.C. § 1823(e).  Section 1823(e) provides that no agreement which tends to diminish the interest of the FDIC in an asset acquired from a closed bank is enforceable against the FDIC unless the agreement meets certain specific requirements, including that the agreement be in writing and executed by the parties contemporaneously with the financial institution's acquisition of the loan at issue.  See 12 U.S.C. § 1823(e).[4]

Since the inception of the D'Oench doctrine and the enactment of Section 1823(e), courts have expanded the reach of the doctrine and its statutory counterpart far "beyond the factual background of the D'Oench case itself, so that it now applies in virtually all cases where a federal depository institution regulatory agency is confronted with an agreement not documented in the institution's records."  OPS Shopping Ctr., Inc. v. FDIC, 992 F.2d 306, 308 (11th Cir. 1993) (quoting Baumann v. Savers Fed. Sav. & Loan Ass'n, 934 F.2d 1506, 1510 (11th Cir. 1991)

_____

[4] Section 217(4) of FIRREA amended Section 1823(e) to apply to the FDIC in its capacity as receiver for a failed bank and to bar claims against the FDIC based on agreements that do not satisfy the requirements of Section 1823(e).  See 12 U.S.C. § 1821(d)(9)(A).

- 5 -

(internal quotation marks omitted)).[5]  Most significantly, in <u>W.T. Langley v. FDIC</u>, 484 U.S. 86, 108 S. Ct. 396 (1987), the Supreme Court clarified that misrepresentations made to induce a borrower to enter into a lending transaction are encompassed within the scope of the term "agreement" to which the requirements of Section 1823(e) attach.  <u>Id</u>. at 92-93, 108 S. Ct. at 401-02.  The Court in <u>Langley</u> also explained that requiring a memorialized agreement is consistent with the purposes of Section 1823(e).  First, the Court noted that Section 1823(e) is intended "to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets," which the Court noted is "necessary when a bank is examined for fiscal soundness by state or federal authorities and when the FDIC is deciding whether to liquidate a failed bank, or to provide financing for purchase of its assets (and assumption of its liabilities) by another bank."  <u>Id</u>. 484 U.S. at 91, 108 S. Ct. at 401.  Thus, the FDIC would be unable "to make reliable evaluations if bank records contained seemingly unqualified notes that are in fact subject to undisclosed conditions."  <u>Id</u>. 484 U.S. at 91-92, 108 S. Ct. at 401.  Second, a requirement that agreements be executed and become regular banking records is designed to "ensure mature consideration of unusual loan transactions by senior bank officials, and prevent fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure."  <u>Id</u>. 484 U.S. at 92, 108 S. Ct. at 401.

Based on its analysis of the text and purpose of Section 1823(e), the Supreme Court in <u>Langley</u> held that Section 1823(e) barred a claim based upon an oral misrepresentation, even if the representation was made to induce the borrower to enter into a lending transaction and even though the claim sounded in tort rather than contract.  <u>See id</u>. 484 U.S. at 89, 108 S. Ct. at 400.

---

[5] While Section 1823(e) and the <u>D'Oench</u> doctrine are not co-extensive, <u>see</u> <u>Murphy v. FDIC</u>, 12 F.3d 1485, (9th Cir. 1993), <u>vacated</u> <u>on</u> <u>other</u> <u>grounds</u>, 38 F.3d 1490 (9th Cir. 1994), they are based on the same policy concerns and thus courts have consistently applied decisions interpreting Section 1823(e) to determine whether the <u>D'Oench</u> doctrine should apply and vice-versa.  <u>See</u> <u>Resolution Trust Corp. v. Dunmar Corp.</u>, 43 F.3d 587, 593 (11th Cir. 1995) (noting that courts have "determined that the purposes underlying the <u>D'Oench</u> doctrine and § 1823(e) were the same, thus permitting utilization of the same analysis under each" and thus finding that "cases interpreting the common law doctrine as well as its statutory counterpart" were applicable precedent to determine whether plaintiff's claims were barred); <u>Vernon v. RTC</u>, 907 F.2d 1101, 1105 (11th Cir. 1990) ("[C]ourts have referred to section 1823(e) and the cases interpreting it as guidelines for the application of the <u>D'Oench</u> doctrine.").

Similarly, the Ninth Circuit has held that the D'Oench doctrine bars claims based on oral misrepresentations against a federal receiver.  See, e.g., RTC v. Kennelly, 57 F.3d 819 (9th Cir. 1995) (per curiam) (relying on Langley to find that plaintiffs' fraudulent inducement defenses and counterclaims were barred by Section 1823(e) and D'Oench); Brookside Assocs. v. Rifkin, 49 F.3d 490, 495 (9th Cir. 1995) (holding that the D'Oench doctrine "expresses a federal policy to protect the RTC from misrepresentations concerning the assets of insured banks" and concluding that the D'Oench doctrine barred plaintiff's claims for fraud and negligent misrepresentation).[6]

Here, Hilton's first cause of action is based on alleged oral misrepresentations concerning the terms of his mortgage loans.  See, e.g., SAC at 4 (alleging that "numerous officials of LB and WM made false and fraudulent statements to Plaintiff" and then listing allegedly false statements).  Hilton, however, has not alleged that these oral misrepresentations were recorded in the loan documents themselves.  Therefore, pursuant to Section 1823(e), such allegations cannot form the basis for a claim against FDIC-Receiver.  Because Hilton's first cause of action is based on alleged oral misrepresentations, it must be dismissed as a matter of law.

In addition, each of Hilton's other causes of action, with the exception of his seventh cause of action, incorporates the allegations in Hilton's first cause of action and Hilton relies principally on the allegations in the first cause of action to provide the factual basis for his other causes of action without any additional factual support.  See, e.g., SAC at 15 (alleging in his fourth cause of action that "the actions described by Defendants above violate the fiduciary duty that existed between plaintiff and defendants").  Because each of Hilton's causes of action (except for the seventh), is based on alleged oral misrepresentations, these causes of action are also barred by Section 1823(e) and must be dismissed.

---

[6] Accord Kilpatrick v. Riddle, 907 F.2d 1523, 1527-28 (5th Cir. 1990) (holding that oral misrepresentations made by a lender to a borrower constitute an unwritten "agreement" that does not bind the FDIC under the D'Oench doctrine); Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 595-96 (11th Cir. 1995) (en banc) (collecting circuit cases barring tort claims against federal receiver under the D'Oench doctrine).

**B.** **Hilton's State Law Claims Are Preempted Because He Seeks To Apply California Common Law To Regulate The Lending Operations Of A Federal Savings Association.**

With the exception of the seventh cause of action, each of Hilton's causes of action is preempted by federal law because Hilton improperly seeks to use California law to regulate the lending operations of a federal savings association. Although Hilton relies on California laws of general application as the basis for his claims, it is well-established that even such general laws are preempted when applied to a field that is subject to exclusive federal regulation.

The Ninth Circuit has held that claims based on state law that are preempted by HOLA and its implementing regulations must be dismissed for failure to state a claim. See Silvas v. E*Trade Mortgage Corp., 514 F.3d 1001 (9th Cir. 2008). Accord Ayala v. World Sav. Bank, FSB, 616 F. Supp. 2d. 1007 (C.D. Cal. 2009); Andrade v. Wachovia Mortgage, FSB, No. 09 CV 0377 JM (WMc), 2009 WL 11111182 (S.D. Cal. Apr. 21, 2009). Because Hilton's claims are preempted, they must be dismissed for failure to state a claim.

1. Congress has granted the OTS exclusive authority to regulate the lending operations of federal savings associations.

In 1933, Congress passed HOLA to "govern the activities of federal savings associations." Silvas, 514 F.3d at 1004. Congress created what is now the OTS for the purpose of administering HOLA, providing the OTS with broad powers to regulate the operations of federal savings associations. See 12 U.S.C. § 1464(a)(1) (2008); de la Cuesta, 458 U.S. at 153. Accord Glendale Fed. Sav. & Loan Ass'n v. Fox, 459 F. Supp. 903, 910 (C.D. Cal. 1978) (commenting that "[i]t would have been difficult for Congress to give the [OTS] a broader mandate"). "Congress plainly envisioned that federal savings and loans would be governed by what the [OTS] — not any particular state — deemed to be the 'best practices'" of local thrift institutions and thus "Congress expressly contemplated, and approved, the [OTS]'s promulgation of regulations superseding state law." de la Cuesta, 458 U.S. at 161-62, 102 S. Ct. 3026-27 (citation omitted).

2. The OTS has completely occupied the field of lending regulations applicable to the operations of federal savings associations.

Pursuant to the broad and exclusive authority afforded by Congress in HOLA, the OTS promulgated 12 C.F.R. § 560.2 to occupy the entire field of lending regulations applicable to

- 8 -

federal savings associations, including WMB, and thereby preempt all state laws to the extent they are used to affect the lending operations of these associations.  Section 560.2(a) provides:

> Occupation of field.  Pursuant to sections 4(a) and 5(a) of the HOLA, 12 U.S.C. 1463(a), 1464(a), OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations when deemed appropriate to facilitate the safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes of the HOLA . . . . OTS hereby occupies the entire field of lending regulation for federal savings associations.  . . .  [F]ederal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section . . . . For purposes of this section, "state law" includes any state statute, regulation, ruling, order or judicial decision.

12 C.F.R. § 560.2(a) (2009) (emphasis added).  By occupying the field of lending regulations, the OTS intended to establish a single, uniform body of regulations for federal institutions: "[I]nstead of being subject to a hodgepodge of conflicting and overlapping state lending requirements, federal thrifts are free to originate loans under a single set of uniform federal laws and regulations."  61 Fed. Reg. 50951, 50965 (Sept. 30, 1996) (OTS comments on § 560.2); see also Silvas, 514 F.3d at 1005-07 (finding that Section 560.2 preempts the field of lending regulations applicable to the operations of federal savings associations).

In Section 560.2(b), the OTS provides illustrative examples of the types of state laws preempted by OTS regulation, including state laws purporting to impose requirements regarding:

> (2) The ability of a creditor to require or obtain private mortgage insurance, insurance for other collateral, or other credit enhancements; . . .

> (4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;

> (5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;

> (6) Escrow accounts, impound accounts, and similar accounts; . . .

> (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or

- 9 -

1   applicants;

2   (10) Processing, origination, servicing, sale or purchase of, or investment or
3   participation in, mortgages . . . .

4   12 C.F.R. § 560.2(b).   Section 560.2(c) clarifies that state laws, including those concerning

5   contract, tort, and commercial law, are not preempted "to the extent that they only incidentally

6   affect the lending operations of Federal savings associations or are otherwise consistent with the

7   purposes of paragraph (a) of this section."   12 C.F.R. § 560.2(c).   The OTS has explained,

8   however, "that the purpose of paragraph (c) is to preserve the traditional infrastructure of basic

9   state laws that undergird commercial transactions, not to open the door to state regulation of

10  lending by federal savings associations." 61 Fed. Reg. 50951, 50966.

11      The Ninth Circuit has established an analytical framework for evaluating whether a state

12  law is preempted by the OTS's regulations.   See Silvas, 514 F.3d at 1005 (quoting 61 Fed. Reg.

13  50951, 50966-67).   First, a court must determine whether the type of law in question, as applied,

14  is listed in Section 560.2(b).   Id.   If so, the analysis ends because the law is preempted.   Id.   If the

15  law is not covered by Section 560.2(b), the court must ask whether the law affects lending.   Id.   If

16  so, then in accordance with Section 560.2(a), a presumption arises that the law is preempted.   Id.

17  This presumption is only reversed if the law can "clearly" be shown to fit within the confines of

18  any of the six categories enumerated in Section 560.2(c).   Id.   For these purposes Section 560.2(c)

19  is to be interpreted "narrowly," and any doubt should be resolved in favor of preemption.   Id.

20      As is clear from the analysis adopted in Silvas, Section 560.2's preemptive force extends

21  not only to state laws that directly regulate federal savings associations, but also to state laws of

22  general application to the extent that they are applied to regulate the operations of federal savings

23  associations.   Id.; see also Munoz v. Fin. Freedom Senior Funding Corp., 567 F. Supp. 2d 1156,

24  1163 (C.D. Cal. 2008) ("In light of Silvas, the fundamental inquiry here becomes whether the

25  [state statute in question] 'as applied' is a type of state law that is preempted under HOLA.").[7]

26

27  _____
    [7] Because the court in Silvas determined that the plaintiffs' claims were based on types of laws
    listed in Section 560.2(b), it determined that it did not need to reach the question of whether the
    laws at issue fit within the confines of Section 560.2(c).   Silvas, 514 F.3d at 1007.   The court
28  noted, however, that if it were to reach this issue, it would reach the same result.   Id. at 1007 n. 3.

Thus, in <u>Kelley v. Mortgage Electronic Registration Systems, Inc.</u>, No. C 09-01538 SI, 2009 WL 2475703 (N.D. Cal. Aug. 12, 2009), this Court found that claims for fraud and conversion were preempted by Section 560.2 to the extent they were based on "allegations that the terms of plaintiffs' loan were unlawful and that plaintiffs did not receive sufficient disclosures about their mortgage . . . ." <u>Id</u>. at *4; <u>see also</u> <u>Andrade</u>, 2009 WL 1111182 at *3-5 (finding state law claims for quiet title, fraud, negligence infliction of emotional distress, negligence, cancellation based on fraud, and impossibility all preempted by Section 560.2 because the state laws, "as applied, would regulate lending activities expressly contemplated by § 560.2(b)"); <u>Ayala</u>, 2009 WL 1364363 at *7-9 (state law claims for quiet title, fraud, negligent infliction of emotional distress, and negligence were preempted by Section 560.2 because the underlying allegations concerned areas of regulation identified as preempted in Section 560.2(b)).

The rationale underlying this application of Section 560.2 to laws of general application is simple: the OTS has specifically declared that states are not allowed to directly regulate the lending operations of federal savings associations.  Therefore, plaintiffs should not be allowed to use laws of general application to indirectly regulate these same operations.  <u>See</u> <u>Haehl v. Wash. Mut. Bank, F.A.</u>, 277 F. Supp. 2d 933, 942 (S.D. Ind. 2003).  Further, allowing plaintiffs to use laws of general application to so regulate federal savings associations would result in individual plaintiffs and state and federal courts setting particularized standards for the operations of these associations, creating a "hodgepodge" of conflicting and overlapping requirements in clear contradiction to the letter and purpose of HOLA and Section 560.2.  <u>See id</u>. at 943 (finding that subjecting federal savings associations to varying state regulations "is precisely what the OTS sought to prevent in establishing a uniform scheme of regulation for savings associations").

     3.    <u>Hilton's state law claims are preempted</u>.

With the exception of his seventh cause of action, Hilton's causes of action all seek to apply California common law to regulate the lending operations of WMB, a federal savings association.  For that reason, these causes of action are preempted by Section 560.2.

Hilton first asserts a common law cause of action for fraud based on WMB's alleged

- 11 -

failure to disclose the terms of Hilton's loan adequately.  See, e.g., SAC at 6, ¶ H.  Such allegations plainly implicate Section 560.2(b)(9), as Hilton is seeking to use a common law fraud claim to regulate the disclosures that WMB, a federal savings association, is required to make.  Thus, Hilton's first cause of action is preempted and must be dismissed.  See Silvas, 514 F.3d at 1006 (dismissing a claim that sought to apply a state law of general application to challenge alleged misrepresentations in a federal savings association's advertising and disclosure documents); Kelley, 2009 WL 2475703 at *4.

Second, in addition to alleging that the disclosures concerning his terms of credit were fraudulent, Hilton's first cause of action also alleges that the terms of credit themselves were fraudulent.  See, e.g., SAC at 8, ¶ O.  Thus, Hilton's fraud allegations also implicate Section 560.2(b)(4) and must be dismissed for that reason as well.  See Kelley, 2009 WL 2475703 at *4 (holding that plaintiffs' fraud claim was preempted by Section 560.2(b)(4) to the extent it was "based on allegations that the terms of plaintiffs' loan were unlawful"); see also Cosio v. Simental, No. Cv 08-6853 PSG (PLAx), 2009 WL 201827, *5 (C.D. Cal. Jan. 27, 2009) (finding that plaintiffs' claims were preempted by Section 560.2(b)(4) to the extent they were based on "the terms of the loan . . . including amortization of loans and adjustments to the interest rate").

Third, Hilton's first cause of action also alleges that WMB fraudulently charged him for "forced home insurance."  See, e.g., SAC at 6-7, ¶ K.  Such allegations implicate Section 560.2(b)(2) because they seek to use a common law fraud claim to regulate "the ability of a creditor to require or obtain private mortgage insurance, insurance for other collateral, or other credit enhancements."  See 12 C.F.R. § 560.2(b)(2); see also OTS Opinion Letter, 1999 OTS Op. at 15-16, No. P-99-3 (Mar. 10, 1999) (finding that a California statute of general application was preempted to the extent it sought to regulate forced placement of hazard insurance by federal savings associations) (attached as Exhibit D to the RJN).

Fourth, Hilton's first cause of action also alleges that WMB imposed unlawful late fees.  See SAC at 8, ¶ N.  Such allegations implicate Section 560.2(b)(5), which preempts the state regulation of "loan-related fees, including . . . initial charges, late charges, prepayment penalties,

- 12 -

servicing fees, and overlimit fees." See 12 C.F.R. § 560.2(b)(5).  See Silvas, 514 F.3d at 1006 (dismissing a claim which sought to use a California law of general application to regulate the loan-related fee a federal savings association could charge); Haehl, 277 F. Supp. 2d at 941-42 (finding that state common law claims were preempted to the extent they were being applied to regulate a loan-related fee).

Finally, the remainder of the allegations in Hilton's first cause of action implicate Section 560.2(b)(10), which preempts the state regulation of "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." See 12 C.F.R. § 560.2(b)(10).  This subsection is intended by the OTS to "cover a wide range of activities which occur during the lifetime of the mortgage."  See Munoz v. Fin. Freedom Senior Funding Corp., 573 F. Supp. 2d 1275, 1281 (C.D. Cal. 2008).  For example, Hilton alleges that WMB used appraisers to "falsely and fradulent [sic] inflate the value of both houses."  See SAC at 5, ¶ E.  Appraisals, however, are a fundamental component of the origination and servicing of mortgages and thus causes of action that seek to use laws of general application to regulate the standards applicable to appraisals are preempted by Section 560.2(b)(10).  See Spears v. Wash. Mut., Inc., No. C-08-00868 RMW, 2009 WL 605835, at *6 (N.D. Cal. Mar. 9, 2009).  Accord Cedeno v. IndyMac Bancorp, Inc., No. 06 Civ. 6438(JGK), 2008 WL 3992304, at *8 (S.D.N.Y. 2008).

Thus, Hilton's first cause of action must be dismissed because it is preempted by Section 560.2.  In addition, because the remainder of Hilton's causes of action (except for the seventh) expressly incorporate the allegations of Hilton's fraud claim, those claims must also be dismissed because they seek to apply California common law to regulate areas preempted by Section 560.2(b).[8]  See, e.g., Andrade, 2009 WL 1111182 at *3-5 (finding state law claim for quiet title preempted); Cedeno, 2008 WL 3992304 at *9-10 (finding a breach of contract claim preempted).

---

[8] Because Hilton's claims are preempted to the extent they concern areas of lending operations listed in Section 560.2(b), it is unnecessary to determine whether any of these claims would "only incidentally affect the lending operations of Federal savings associations," under Section 560.2(c).  See Silvas, 514 F.3d at 1006-07.  For the same reasons explained above, however, Hilton's claims would have more than an incidental affect on the lending operations of WMB and similarly situated federal savings associations.  See id. at 1007 n. 3.

- 13 -

1

**C.**     **Hilton's Claims Must Be Dismissed Because They Fail To State A Claim Upon Which Relief May Be Granted.**

2

3

In addition to the bases for dismissal discussed above, each of Hilton's causes of action

4

must be dismissed for failure to state a claim upon which relief may be granted.

5

1.     First cause of action: Fraud.

6

To avoid dismissal for inadequacy under Federal Rule of Civil Procedure 9(b),

7

"[plaintiff's] complaint . . . need[s] to state the time, place, and specific content of the false

8

representations as well as the identities of the parties to the misrepresentation." Edwards v. Marin

9

Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004) (citations and internal quotation marks omitted).

10

Hilton must also sufficiently allege the elements of a common law fraud claim, which are

11

"misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance and resulting

12

damage." Kelley, 2009 WL 2475703, at *6 (citation and internal quotation marks omitted).  It is

13

clear that Hilton's fraud claim fails to satisfy these requirements.  Instead, Hilton simply lists a

14

series of allegations (many of which cannot be considered misrepresentations), without specifying

15

who made each statement, when the statement was made, where the statement was made, or to

16

identify which misrepresentations pertain to which of his properties.[9]  Thus, Hilton's first cause

of action fails to state a claim upon which relief may be granted and must be dismissed.

17

In addition, Hilton's allegations of fraud regarding the Hillsborough property are barred

18

by California's three-year statute of limitations for fraud claims.  See Cal. Civ. Proc. Code

19

§ 338(d)(2007).  Hilton alleges that Defendants' fraudulent practices caused Hilton to have to sell

20

a separate house, unrelated to this litigation, in November 2004. See SAC at 10-11, ¶ 15.  Hilton

21

was thus on notice at least by that point in time of the alleged fraud and thus his failure to file his

22

complaint until January 2008 bars him from asserting a cause of action for fraud as related to the

23

Hillsborough property.  See, e.g., Suckow Borax Mines Consol. v. Borax Consol., 185 F.2d 196,

24

25

26

27

28

---

[9] Hilton's failure to identify which alleged actions were taken by each defendant is repeated in all but his seventh and eighth causes of action.  This failure prevents each defendant from knowing the claims against it and is a basis for dismissing these causes of action for failure to state a claim.  See Fortaleza v. PNS Fin. Servs. Group, Inc., No. C 09-2004 PJH, 2009 WL 2246212 (N.D. Cal. July 27) (dismissing multiple common law claims in part because "plaintiff does not allege any specific claim against any specific defendant.  Rather, plaintiff generally alleges her claim against 'all defendants,' without identifying which defendant is responsible for her alleged injuries.").

- 14 -

204 (9th Cir. 1950) ("[A] complaint may properly be dismissed on motion for failure to state a claim when the allegations in the complaint affirmatively show that the complaint is barred by the applicable statute of limitations.").

    2.    <u>Second cause of action: Breach of contract</u>.

In his second cause of action, for breach of contract, Hilton alleges that Defendants breached his mortgage contracts.  In order to state a claim for breach of contract under California common law, Hilton must

> plead the contract, his performance of the contract or excuse for nonperformance, [the defendant's] breach and the resulting damage.  Further, the complaint must indicate on its face whether the contract is written, oral, or implied by conduct.  If the action is based on an alleged breach of a written contract, the terms must be set out verbatim in the body of the complaint or a copy of the written instrument must be attached and incorporated by reference.

<u>Otworth v. Southern Pac. Transp. Co.</u>, 166 Cal. App. 3d 452, 458-459 212 Cal. Rptr. 743 (1985) (internal citations and footnote omitted) (sustaining a demurrer where plaintiff failed to sufficiently plead these elements).  Hilton has failed to satisfy these pleading requirements.  First, Hilton has failed to allege how Defendants have breached his mortgage contracts.  He merely alleges that the breach has been "stated supra," <u>see</u> SAC at 13, ¶ 23, but fails to identify which of the multitude of allegations in his first cause of action constitute the breach.  Further, while Hilton alleges that the breached contracts were written, <u>see id.</u>, he fails to attach the contracts or identify which provision of the contracts was breached.[10]  Finally, while Hilton alleges that he "has performed all duties required" by the contracts, <u>see id.</u>, it is clear from his later allegations that he has failed to pay his monthly payments, <u>see id.</u> at 14, ¶ 27.  Thus, Hilton's second cause of action fails to state a claim upon which relief may be granted and must be dismissed.

    3.    <u>Third cause of action: Breach of duty and covenant of good faith and fair dealing</u>.

In his third cause of action, Hilton alleges that Defendants have breached the duty and covenant of good faith and fair dealing by failing to "negotiate fairly and reasonably as to timing

---

[10]  To the extent that Hilton's claims are instead based on alleged oral representations made prior to his entering into the mortgage contracts, these claims are barred by Section 1823(e).  <u>See</u> <u>supra</u>, section III.A.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

and amount of monthly mortgage loan payments" when Hilton was unable to make full payments on his loans. See SAC at 14, ¶¶ 26-27. The implied covenant of good faith, however, cannot create, expand or contradict contractual terms, and a defendant's compliance with the terms of the contract cannot serve as the basis for a breach of the covenant. See, e.g., Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc., 2 Cal. 4th 342, 373 826 P.2d 710, (1992) ("It is universally recognized the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract."); Racine & Laramie, Ltd., v. Dept. of Parks & Recreation, 11 Cal. App. 4th 1026, 1032, 14 Cal. Rptr. 2d 335, 339 (1992) ("[T]he implied covenant is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated in the contract."). Finally, when the implied covenant arises from a contract, the plaintiff must also allege that there was a contractual provision upon which the implied covenant hinged. See, e.g., Berger v. Home Depot U.S.A., Inc., 476 F. Supp. 2d 1174, 1177 (C.D. Cal. 2007) (dismissing a claim for breach of the implied covenant and holding that "[t]he implied covenant will not apply where no express term exists on which to hinge an implied duty, and where there has been compliance with the contract's express terms.") (citations and internal quotations omitted).

Hilton alleges that even though he was unable to pay his loan payments, WMB should have allowed him to make partial payments due to his extenuating circumstances. See SAC at 14, ¶ 27. Hilton, however, has failed to cite any provision of the mortgage contracts which allows for or requires that WMB accept partial payments. Hilton's allegations, which clearly seek to create obligations not provided for in the mortgage contracts, cannot form the basis of a claim for breach of the implied covenant of good faith and fair dealing. Thus, Hilton's third cause of action fails to state a claim upon which relief may be granted and must be dismissed as a matter of law.

4.      Fourth cause of action: Breach of fiduciary duty.

In his fourth cause of action, Hilton alleges that the defendants have breached the fiduciary duty they allegedly owed him. See SAC at 15, ¶ 30. "The elements of a cause of action for breach of fiduciary duty are: 1) the existence of a fiduciary duty; 2) a breach of the fiduciary

- 16 -

duty; and 3) resulting damage." <u>Pellegrini v. Weiss</u>, 165 Cal. App. 4th 515, 524, 81 Cal. Rptr. 3d 387, 397 (2008).  California law is clear that "[t]he relationship between a lending institution and its borrower-client is not fiduciary in nature."  <u>Fortaleza</u>, 2009 WL 2246212 at *10 (quoting <u>Nymark v. Heart Fed. Sav. & Loan Ass'n.</u>, 231 Cal. App. 3d 1089, 1093 n.1, 1096, 283 Cal. Rptr. 53, 54, 56-57 (1991) (internal quotation marks omitted)  Rather, "[a] commercial lender is entitled to pursue its own economic interests in a loan transaction."  <u>See</u> <u>id</u>. (citing <u>Nymark</u>, 231 Cal. App. 3d at 1093 n.1, 283 Cal. Rptr. 53).  Thus, because no fiduciary duty existed between WMB and Hilton, Hilton's fourth cause of action fails to state a claim upon which relief may be granted and thus must be dismissed as a matter of law.

     5.    <u>Fifth cause of action: Wrongful and bad faith attempted foreclosure.</u>

In his fifth cause of action, Hilton alleges that actions of Defendants "described above amount to wrongful and bad faith attempted foreclosure."  <u>See</u> SAC at 15, ¶ 33.  Hilton's claim for wrongful foreclosure should be dismissed as it is "premature given there has been no foreclosure of the property."  <u>Vega v. JPMorgan Chase, N.A.</u>, No. CV F 09-1444 LJO GSA, 2009 WL 2731039, at *6 (E.D. Cal. Aug. 26, 2009) (citing <u>Munger v. Moore</u>, 11 Cal. App. 3d 1, 7, 89 Cal. Rptr. 323 (1970)).  Hilton does not allege that WMB or FDIC-Receiver has actually initiated a foreclosure sale, but is instead seeking to hold defendants liable for "attempted" wrongful foreclosure – i.e., of threatening to initiate foreclosure, but not actually engaging in a foreclosure. The fact is, Hilton has successfully enjoined foreclosure to date.  Because there has been no foreclosure sale, Hilton has failed to state a cause of action for wrongful foreclosure and his fifth cause of action must be dismissed.  <u>See</u> <u>id</u>.

In addition, to bring a claim for wrongful foreclosure, the plaintiff must allege a valid and viable tender.  <u>See</u> <u>Alicea v. GE Money Bank</u>, No. C 09-00091 SBA, 2009 WL 2136969, at *3 (N.D. Cal. July 16, 2009) (citing <u>Karlsen v. Am. Sav. & Loan Ass'n</u>, 15 Cal. App. 3d 112, 117, 92 Cal. Rptr. 851, 854 (1971)).  "A valid and viable offer of tender means that it is made in good faith, the party making the tender has the ability to perform, and the tender must be unconditional."  <u>Id</u>. (citing Miller & Starr, <u>California Real Estate</u>, §§ 1493-1495 (3d ed. 1989).

- 17 -

1
2

Hilton does not allege that he has tendered or offered to tender the amount necessary to cure his

default and thus he has failed to state a cause of action for wrongful foreclosure.

3
4

   6.  Sixth cause of action: Slander of title and suit to quiet title.[11]

  In his first sixth cause of action, Hilton alleges that "[t]he acts of defendants described

5
6

above amount to slander of title" of both of Hilton's properties.  See SAC at 15, ¶ 36.  A plaintiff

asserting a claim for slander of title must allege four elements: "(1) a publication, (2) which is

7
8

without privilege or justification, (3) which is false, and (4) which causes direct and immediate

pecuniary loss."  Manhattan Loft, LLC v. Mercury Liquors, Inc., 173 Cal. App. 4th 1040, 1051,

9
10

93 Cal. Rptr. 3d 457, 464 (2009) (citing Howard v. Schaniel, 113 Cal. App. 3d 256, 263-64, 169

Cal. Rptr. 678, 681-82 (1980)).  Hilton has failed to allege any of these elements or sufficient

11
12

facts to establish these elements.  Hilton's claim for slander of title should therefore be dismissed

for failure to state a claim upon which relief may be granted.

13
14

  In addition, Hilton demands that quiet title be granted.  See SAC at 15-16, ¶ 37.  To allege

a claim for quiet title, a plaintiff must include: (1) a description of the property in question; (2) the

15
16

basis for plaintiff's title; and (3) the adverse claims to plaintiff's title.  See Cal. Civ. Proc. Code §

761.020 (2009).  Hilton has failed to allege the elements necessary to entitle him to relief,

17
18

including that he is the rightful owner of the properties in question by showing that he has

satisfied his obligations under the mortgage contracts.  Instead, Hilton has admitted that he has

19

not satisfied his obligations in that he has failed to pay his monthly mortgage payments.

20
21

  Further, "under California law, a plaintiff seeking to quiet title in the face of a foreclosure

must allege tender or an offer of tender of the amount borrowed."  Mangindin v. Wash. Mut.

22
23

Bank, No. C 09-01268 JW, 2009 WL 1766601, at **9-10 (N.D. Cal. June 18, 2009) (dismissing a

claim for quiet title in part because plaintiffs had not alleged tender).  As stated above, Hilton has

24

not tendered or offered to tender the amount necessary to pay off the loan or cure any default.

25
26

  Finally, as explained infra, see Section III.D.2, federal law prohibits the granting of

27
28

---

[11]  The SAC mistakenly labels two causes of action as the "sixth" cause of action.  For clarity, FDIC-Receiver will distinguish between Hilton's "first sixth" cause of action, which is for slander of title, and his "second sixth" cause of action, which is for declaratory relief.

equitable relief such as quiet title against FDIC-Receiver.

       7.     Sixth cause of action: For declaratory relief.

In his second sixth cause of action, Hilton seeks declaratory relief.  As explained infra, see Section III.D.2, federal law prohibits the granting of declaratory relief against FDIC-Receiver and thus this cause of action must be dismissed.

       8.     Seventh cause of action: For willful violation of January 18 Order.

In his seventh cause of action, Hilton seeks monetary damages for willful violation of the State Court's January 18 Order.  However, there is "no such thing as an independent cause of action for civil contempt."  D. Patrick, Inc. v. Ford Motor Co., 8 F.3d 455, 459 (7th Cir. 1993) (quoting Blalock v. United States, 844 F.2d 1546, 1550 (11th Cir. 1988) (per curiam) (internal quotation marks omitted)).  Instead, "[c]ivil contempt is a proceeding instituted in furtherance of an existing cause of action.  It merely remedies the disobedience of an injunction already entered by the court."  Donovan v. Sureway Cleaners, 656 F.2d 1368, 1373-74 (9th Cir. 1981) (citation omitted).  Thus, Hilton's assertion of WMB's alleged violation of the January 18 Order as an independent cause of action is procedurally deficient and should be dismissed.

       9.     Eighth cause of action: Defamation: libel and slander.

In his eighth cause of action, Hilton alleges that Defendants have committed defamation in both written and oral form.  As with fraud, a claim for defamation under California law is subject to heightened pleadings standards, which require that a plaintiff specifically identify the allegedly defamatory statement and the substance of the statement.  See Jones v. Thyssenkrupp Elevator Corp., No. C-05-3539 EMC, 2006 WL 680553, at *6 (N.D. Cal. Mar. 14, 2006).  Hilton has failed to satisfy these requirements.  In fact, Hilton has failed to specifically identify a single instance of alleged libel or slander.[12]  Thus, Hilton's eighth cause of action fails to state a claim upon which relief may be granted and must be dismissed as a matter of law.

---

[12] In addition, while Hilton alleges that Defendants have been making defamatory statements "[b]etween on or about April 2003 continuously to the present," see SAC at 18, ¶ 49, it is clear that any allegedly defamatory conduct that occurred prior to January 2007 is barred by the statute of limitations.  See Cal. Civ. Proc. Code § 340 (2003) (establishing a one-year statute of limitations for claims for defamation).

**D.** **Hilton's Requests For Punitive Damages and Sanctions, Injunctive And Declaratory Relief, Rescission, Quiet Title, And Attorneys' Fees Are Prohibited By Federal Law.**

FIRREA expressly prohibits certain forms of relief from being awarded against FDIC-Receiver, including punitive damages, equitable relief and attorneys' fees. Thus, aside from the bases for dismissing Hilton's claims discussed above, Hilton's requests for punitive damages, equitable relief and attorneys' fees must be dismissed for the separate and independent reason that they are precluded by federal law.

1.   Hilton is precluded from obtaining punitive damages or sanctions against FDIC-Receiver.

Hilton's request for punitive damages in each of his causes of action and in his general prayer for relief, and his request for "sanctions" in Count VII must be dismissed as a matter of law. As the Ninth Circuit has held, Congress has expressly commanded in 12 U.S.C. § 1825(b)(3) that the FDIC as Receiver, "shall not be liable for any amounts in the nature of penalties or fines . . . ." See Monrad v. FDIC, 62 F.3d 1169, 1175 (9th Cir. 1995) (overturning the district court's award of "late payment penalties" based in part on the immunity provided by 12 U.S.C. § 1825(b)(3)) (internal quotations omitted); accord FDIC v. Southwest Motor Coach Corp., 780 F. Supp. 421, 423 (N.D. Tex. 1991) (finding that, based in part on 12 U.S.C. § 1825(b)(3), the "FDIC is immune from the penalties imposed by the Texas usury laws").

Section 1825(b)(3) effectively codifies longstanding federal common law barring the imposition of punitive or exemplary damages against an agency or instrumentality of the United States and applies that principle to the FDIC as Receiver of a failed financial institution. See, e.g., Bank One, Tex., N.A. v. Taylor, 970 F.2d 16, 33 (5th Cir. 1992) ("It is established law that agencies of the United States cannot be held liable for punitive fines or assessments absent express Congressional authorization.").[13]   The scope of Section 1825(b)(3)'s prohibition on punitive relief is not limited by the label given to any particular requested relief. Instead, it is the nature of the relief being sought that must be examined to determine if it is punitive. See

---

[13]  Accord Commerce Fed. Sav. Bank v. FDIC, 872 F.2d 1240, 1247 (6th Cir. 1989); Smith v. Russellville Prod. Credit Ass'n, 777 F.2d 1544, 1549 (11th Cir. 1985); Rohweder v. Aberdeen Prod. Credit Ass'n, 765 F.2d 109, 113 (8th Cir. 1985); Cohen v. FDIC, No. CIV. A. 91-CV-3944, 2003 WL 21118673, at *8 (E.D. Pa. May 14, 2003); Lanigan v. RTC, No. 91 C 7216, 1994 WL 8160, at *5 (N.D. Ill. Jan. 11, 1994); Southwest Motor Coach Corp., 780 F. Supp. at 423.

Missouri Pac. R.R. Co. v. Ault, 256 U.S. 554, 565, 41 S. Ct. 593, 597 (1921) ("[w]hatever name be applied," what matters is whether "the element of punishment clearly predominates"). "Penalty" is "[p]unishment imposed on a wrongdoer, usually in the form of imprisonment or fine; especially, a sum of money exacted as punishment for either a wrong to the state or a civil wrong (as distinguished from compensation for the injured party's loss)." Black's Law Dictionary 1168 (8th ed. 2004). The term "penalty" encompasses a broad spectrum of punitive measures. The defining characteristic of a penalty is its objective to punish and deter. See, e.g., Flick v. Borg-Warner Corp., 892 F.2d 285, 295 (3d Cir. 1989) (29 U.S.C. § 1132(c) operates as a penalty because "[i]t is deterrent and punitive in nature, not compensatory . . . ."). Here, any request by Hilton for punitive damages clearly falls within the scope of Section 1825(b)(3). Further, Hilton's request for "sanctions in the amount of $35,000" for each alleged violation of the OSC and TRO, see SAC at 17, ¶45, is also clearly intended to be a penalty against WMB and thus also forbidden as against FDIC-Receiver by Section 1825(b)(3).

Finally, an award of punitive damages or sanctions against FDIC-Receiver would not advance the two main public policy objectives for awarding such relief: to punish wrongdoers and to deter others from committing similar offenses. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 266-67, 101 S. Ct. 2748, 2759-60 (1981) ("Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct."). Neither of these objectives is met when the FDIC is acting as Receiver for a failed financial institution. Rather than punishing the alleged wrongdoer — the failed bank, which no longer exists — an award of punitive damages or sanctions against the FDIC as Receiver "would only serve to punish innocent creditors of the failed institution by diminishing available assets" and "could have no deterrent effect." FDIC v. Claycomb, 945 F.2d 853, 861 (5th Cir. 1991).[14]

---

[14]  Accord Monrad, 62 F.3d at 1175 (observing that an award of punitive damages against FDIC as receiver would have minimal deterrent effect and would punish innocent creditors by diminishing available assets); Tuxedo Beach Club Corp. v. City Fed. Sav. Bank, 749 F. Supp. 635, 649 (D.N.J. 1990) ("[P]unitive damages are imposed to punish the wrongdoer and deter others; these considerations have little weight, however, where the wrongful party is in receivership and the fine would ultimately be paid by innocent creditors."); Prof'l Asset Mgmt.,

Accordingly, this Court should deny Hilton's request for an award of punitive damages in each of his causes of action and in his general prayer for relief and his claim for sanctions in his seventh cause of action, and hold that any other requests sought by Hilton in the SAC that constitute penalties or punitive damages are unrecoverable as a matter of law.

2.   Hilton's requests for injunctive and declaratory relief, rescission, and quiet title are precluded by 12 U.S.C. § 1821(j).

Hilton's requests for injunctive and declaratory relief, rescission, and quiet title in his first through fifth causes of action and both his sixth causes of action and in his general Prayer for Relief should be dismissed as a matter of law.   FIRREA prohibits the granting of any type of equitable relief against the FDIC as Receiver.   In 12 U.S.C. § 1821(j), Congress withdrew jurisdiction from all courts to restrain or affect the Receiver from exercising its statutory powers and functions.   Section 1821(j) provides that "[e]xcept as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver." 12 U.S.C. § 1821(j) (emphasis added); see also Freeman v. FDIC, 56 F.3d 1394, 1399 (D.C. Cir. 1995) ("Section 1821(j) does indeed effect a sweeping ouster of courts' power to grant equitable remedies to parties like the [plaintiffs]."); accord Sahni v. American Diversified Partners, 83 F.3d 1054, 1058 (9th Cir. 1996) ("Essential to these enumerated powers is the FDIC's ability to carry out its basic functions as a receiver free from judicial restraint, pursuant to 12 U.S.C. § 1821(j)."). "[T]he fact that the [Receiver]'s actions might violate some other provision of law does not render the anti-injunction provision inapplicable."   Volges v. RTC, 32 F.3d 50, 52 (2d Cir. 1994). The Ninth Circuit and nine other U.S. Courts of Appeals, have held that Section 1821(j) means exactly what it says — courts lack jurisdiction to grant any form of relief that would restrain or affect the Receiver's exercise of its statutory powers and functions.   See, e.g., Sahni, 83 F.3d at 1058, Tillman v. RTC, 37 F.3d 1032, 1036 (4th Cir. 1994) ("It is abundantly clear that the RTC is authorized to pursue its foreclosure of Tillman's property and that the courts may not interfere by

Inc. v. Penn Square Bank, N.A., 566 F. Supp. 134, 136 (W.D. Okla. 1983) ("an award of punitive damages against the receiver would not punish the Bank, but its innocent creditors and uninsured depositors").

1

entering any injunction to halt the sale.").[15]

2

Further, because "there is little practical difference between injunctive and declaratory

3

relief" (see <u>California v. Grace Brethren Church</u>, 457 U.S. 393, 408, 102 S. Ct. 2498, 2508

4

(1982)), courts have consistently found that Section 1821(j) bars claims for declaratory relief

5

against the FDIC as Receiver.  <u>See</u>, <u>e.g.</u>, <u>Hindes</u>, 137 F.3d at 161; <u>Freeman</u>, 56 F.3d at 1399;

6

<u>Carney</u>, 19 F.3d at 958.

7

In addition, the Ninth Circuit has held that Section 1821(j) also prohibits courts from

8

granting the relief of rescission against the FDIC as Receiver.  <u>See</u> <u>Sahni</u>, 83 F.3d at 1059 ("The

9

granting of Sahni's request in the present case to rescind the asset sales by the FDIC would

10

constitute an improper judicial restraint on the FDIC in violation of § 1821(j).").[16]

11

Finally, in his first sixth cause of action, Hilton requests the remedy of quiet title.

12

California courts have consistently held that the remedy of quiet title is equitable in nature.  <u>See</u>,

13

<u>e.g.</u>, <u>Caira v. Offner</u>, 126 Cal. App. 4th 12, 24-25, 24 Cal. Rptr. 3d 233, 241-42 (2005) ("An

14

action to quiet title is akin to an action for declaratory relief in that the plaintiff seeks a judgment

15

declaring his rights in relation to a piece of property. . . .  Thus, it is also well established that

16

actions to quiet title, like true declaratory relief actions, are generally equitable in nature.").

17

18

---

[15] <u>Accord</u> <u>Courtney v. Halleran</u>, 485 F.3d 942, 948 (7th Cir. 2007), <u>cert</u>. <u>denied</u>, 128 S. Ct. 1256

19

(2008); <u>Hindes v. FDIC</u>, 137 F.3d 148, 159-60 (3d Cir. 1998); <u>Hanson v. FDIC</u>, 113 F.3d 866, 871 (8th Cir. 1997); <u>Bursik v. One Fourth St. N., Ltd.</u>, 84 F.3d 1395, 1397 (11th Cir. 1996); <u>Tri-

20

State Hotels, Inc. v. FDIC</u>, 79 F.3d 707, 715 (8th Cir. 1996); <u>Lloyd v. FDIC</u>, 22 F.3d 335, 336 (1st Cir. 1994); <u>Carney v. RTC</u>, 19 F.3d 950, 956 (5th Cir. 1994); <u>National Trust for Historic

21

Pres. v. FDIC</u>, 21 F.3d 469, 472 (D.C. Cir. 1994), <u>reinstating in part</u>, 995 F.2d 238 (D.C. Cir. 1993); <u>Ward v. RTC</u>, 996 F.2d 99, 102 (5th Cir. 1993); <u>Harkness Apartment Owners Corp. v.

22

FDIC</u>, 999 F.2d 538 (2d Cir. 1993); <u>United Liberty Life Ins. Co. v. Ryan</u>, 985 F.2d 1320, 1329 (6th Cir. 1993); <u>Gross v. Bell Sav. Bank PaSA</u>, 974 F.2d 403, 404, 406 (3d Cir. 1992);

23

<u>Telematics Int'l, Inc. v. NEMLC Leasing Corp.</u>, 967 F.2d 703, 707 (1st Cir. 1992).

24

[16] <u>Accord</u> <u>Tri-State Hotels</u>, 79 F.3d at 715 (under section 1821(j), rescinding mortgage documents "would act as an impermissible restraint on the ability of the FDIC to exercise its powers as

25

receiver"); <u>Lloyd</u>, 22 F.3d at 337 (claims for reformation or rescission "lie in the maw of [section 1821(j)], for, in the statutory parlance, the plaintiff's complaint 'seeks a determination of rights

26

with respect to [ ] the assets of a[ ] depository institution for which the Corporation has been appointed receiver."  12 U.S.C. § 1821(d)(13)(D)"); <u>National Historic Trust</u>, 21 F.3d at 472

27

(Section 1821(j) bars declaratory relief, injunction and rescission against Receiver); <u>United Liberty Life Ins. Co.</u>, 985 F.2d at 1329 (holding that the plaintiff's request for a judicial order

28

rescinding sales transaction of receivership assets would "limit RTC's exercise of power as a receiver . . . . [and] the district court lacked the jurisdiction to issue such an order").

Thus, pursuant to Section 1821(j), such a remedy is not available against FDIC-Receiver.  See Freeman, 56 F.3d at 1399 ("Section 1821(j) does indeed effect a sweeping ouster of courts' power to grant equitable remedies to parties like the [plaintiffs]."); Bursik, 84 F.3d at 1397 (dismissing claims for equitable relief pursuant to Section 1821(j)).

Accordingly, Hilton's requests for injunctive and declaratory relief, rescission, and quiet title should be dismissed as a matter of law.

       3.      Hilton cannot recover attorneys' fees against FDIC-Receiver.

In his seventh cause of action and in his general Prayer for Relief, Hilton requests an award of attorneys' fees.  See SAC at 17, 19.  Under FIRREA, attorneys' fees may not be awarded against FDIC-Receiver as a matter of law, for two separate and independent reasons.

First, a recovery of attorneys' fees against FDIC-Receiver would "run afoul of the requirement that the assets of a failed bank be ratably distributed among the bank's creditors holding approved or adjudicated claims."  Interfirst Bank-Abilene, N.A. v. FDIC, 777 F.2d 1092, 1097 (5th Cir. 1985) (ratable distribution requirement in National Banking Act ("NBA") superseded state law providing for attorneys' fees in contract cases); see also 12 U.S.C. § 1821(i) (provision of FIRREA requiring ratable distribution of receivership assets).  For over a century, courts have barred attorneys' fees claims against bank receiverships as impermissible preferences which, if allowed, would contravene ratable distribution requirements by preferring certain creditors over others.  See, e.g., U.S. ex rel. White v. Knox, 111 U.S. 784, 788, 4 S. Ct. 686, 687 (1884) ("No provision is made by law for the payment of the expenses of the claimant . . . and necessarily that loss must fall on [the claimant.]").[17]  This is the case for both national bank and thrift receiverships.  Compare 12 U.S.C. § 194 (ratable distribution required under NBA) with 12 U.S.C. § 1821(i) (ratable distribution required under FIRREA).

Second, awarding attorneys' fees is barred by FIRREA because it would constitute an

_____

[17] Accord Fash v. First Nat'l Bank, 89 F.2d 110, 112 (10th Cir. 1937) (fees "would constitute a plain impingement upon the . . . ratable distribution of the assets"); Citizens' Bank & Trust Co. v. Thornton, 174 F. 752, 763 (5th Cir. 1909) (allowing fees provided for in contract would be "a penalty upon other creditors to the extent that the amount allowed . . . diminishes [their] dividends").

- 24 -

impermissible penalty.  Courts have routinely recognized fee awards as penal in nature.  See, e.g., In re Sterten, 546 F.3d 278, 280 (3d Cir. 2008) (describing attorneys' fees as part of the penalty under TILA for inaccurate disclosure).[18]  As such, any award of attorneys' fees that Hilton may seek under state law would be in the nature of a penalty and prohibited by Section 1825(b)(3).

Therefore, the Court should dismiss Hilton's request for attorneys' fees in his seventh cause of action and in his general Prayer for Relief.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, FDIC-Receiver's motion for judgment on the pleadings should be granted and certain forms of relief requested by Hilton should be dismissed.

Respectfully submitted,

DATED:   September 25, 2009

/s/ Stephen M. Ng
David A. Super (admitted pro hac vice)
Ryan E. Bull (admitted pro hac vice)
Stephen M. Ng (admitted pro hac vice)

Jean L. Bertrand
C. Craig Bridwell
SCHIFF HARDIN LLP
One Market, Spear Street Tower
Thirty-Second Floor
San Francisco, CA  94105

BAKER BOTTS L.L.P.
The Warner
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

*Attorneys for Defendant Federal Deposit Insurance Corporation,*
*as Receiver for Washington Mutual Bank*

---

[18] <u>Accord</u> <u>Sanders v. Jackson</u>, 209 F.3d 998, 1004 (7th Cir. 2000) (in the context of the Federal Debt Collection Practices Act, explaining that "attorneys' fees are punitive in the broad sense of the term in that they deprive the defendant of capital and thereby provide a strong incentive not to violate the law"); <u>Marquart v. Lodge 837, Intern. Ass'n of Machinists and Aerospace Workers</u>, 26 F.3d 842, 848 (8th Cir. 1994) ("an award of attorneys' fees to prevailing Title VII plaintiffs is also a means by which Congress can punish employers who violate federal law"); <u>Wright v. Fin. Serv. of Norwalk, Inc.</u>, 22 F.3d 647, 651 (6th Cir. 1994) (noting deterrent effect of attorneys' fees remedy under the FDCPA); <u>Smith v. Chapman</u>, 614 F.2d 968, 971 (5th Cir. 1980) (attorneys' fees part of TILA's "entire penalty" against lender); <u>Williams v. Pub. Fin. Corp.</u>, 598 F.2d 349, 359 (5th Cir. 1979) (noting TILA's "attorney fee penalty"); <u>Farmington Dowel Prods. Co. v. Forster Mfg. Co.</u>, 421 F.2d 61, 90 (1st Cir. 1970) (payment of attorney's fees by a losing defendant was "part of his penalty for having violated the antitrust laws"); <u>Harris v. Coldwell Banker Real Estate Corp.</u>, No. 4:05CV176-P-A, 2007 WL 3197231, at *1 (N.D. Miss. Oct. 26, 2007) (attorneys' fees under RICO are punitive in nature).