IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

STANLEY G. HILTON,

    Plaintiff,

  v.

WASHINGTON MUTUAL BANK,

    Defendant.

No. C 09-1191 SI

**ORDER GRANTING FDIC'S MOTION FOR JUDGMENT ON THE PLEADINGS; GRANTING MOTIONS TO DISMISS FILED BY FIDELITY NATIONAL AND FIRST AMERICAN; AND GRANTING PLAINTIFF LEAVE TO AMEND**

Several motions are scheduled for a hearing on October 30, 2009. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matters are appropriate for resolution without oral argument, and VACATES the hearing. The Court also VACATES the October 30, 2009 case management conference. As set forth below, the Court GRANTS defendants' motions and GRANTS plaintiff one final opportunity to amend the complaint. If plaintiff wishes to amend the complaint, he must do so no later than **November 20, 2009**.

## BACKGROUND[1]

On January 16, 2008, plaintiff Stanley Hilton filed a complaint against Washington Mutual Bank ("WMB"), Long Beach Mortgage Company, Fidelity Title Company, First American Title Company, Appraisers A and B, and Does 1 - 500 in Case No. CGC-08-471131 in the San Francisco County Superior Court. Hilton alleges that defendants fraudulently induced him to sign mortgages on two

---

[1] Defendants have filed Requests for Judicial Notice of the state court documents, as well as documents related to the FDIC's appointment as Receiver for Washington Mutual Bank. The Court takes judicial notice of the submitted documents.

properties located at 3589 21st Street, San Francisco and 670 Darrell Road, Hillsborough, California. WMB or its subsidiary, Long Beach Mortgage Company ("Long Beach"), was the lender on both mortgages, Fidelity Title Company acted as the escrow agent for the San Francisco property, and First American Title Company was the escrow agent on the Hillsborough property. The second amended complaint alleges that the Hillsborough transaction occurred on or about April 3, 2003, and that the San Francisco transaction occurred on or about August 2006. Second Amended Compl. ("SAC") ¶ 8.

On January 18, 2008, the state court issued an Order to Show Cause and Temporary Restraining Order. The January 18, 2008 order restrained and enjoined defendants WMB and Long Beach from "issuing and recording with county records a 'Notice of Default' on the two loan numbers, 0729334821 and 744323360, and from foreclosing, selling, attempting to sell, or causing to be sold [the] properties described in the complaint on file either under the power of sale [] the deeds of trust or by foreclosure action, and enjoining defendants from engaging in any further collection action against plaintiff on these two mortgage loans." The January 18, 2008 order applies to defendants' "agents, officers, employees, partners, investors, successors, and representatives" as well as to "all persons acting in concert or participating with them." According to FDIC, the state court extended the January 18, 2008 order on several occasions and it remains in force today.

Plaintiff voluntarily amended the complaint on February 15, 2008, and after the court sustained demurrers by First National Title Company and First American Title Company, plaintiff filed the SAC on September 17, 2008. In the SAC, which is the subject of defendants' motions, plaintiff alleges claims for (1) fraud, (2) breach of contract, (3) breach of the duty of covenant of good faith and fair dealing, (4) breach of fiduciary duty, (5) wrongful and bad faith attempted foreclosure, (6) slander of title and suit to quiet title, (7) declaratory relief, (8) violation of the January 18, 2008 order, and (9) defamation.[2]

---

[2] The organization of the SAC is confusing, and lists several causes of action twice. For example, the SAC alleges a "First Cause of Action: Fraud: Actual Fraud: Promissory Fraud and Constructive Fraud," and separately another "First Cause of Action: Fraud." Similarly, there are two claims listed as "Sixth Cause of Action": one for "Slander of Title and Suit to Quiet Title," and one for "Declaratory Relief to Declare Defendants WM and LB Without Standing to File a Notice of Default or to Foreclose, Because They Do Not Own the Notes or Deeds of Trust as They Sold Them to Unknown Investors." Where the separately listed claims appear duplicative, as with the fraud claims, the Court has grouped them together under one cause of action for purposes of analyzing defendants' motions.

Defendants filed demurrers to the SAC, and those demurrers were pending at the time of removal.

On September 25, 2008, the Office of Thrift Supervision ("OTS"), which regulates the operations of federally chartered savings associations, closed WMB and appointed FDIC as Receiver for WMB. Docket No. 70, Ex. A (OTS Order No. 2008-36). On November 21, 2008, FDIC-Receiver filed a notice in the state court, requesting that it be substituted in for WMB, which the state court granted on February 26, 2009. On January 6, 2009, plaintiff filed an administrative claim with FDIC-Receiver in the mandatory administrative claims process set forth in the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 (1989) ("FIRREA"). On March 18, 2009, FDIC-Receiver removed the case to this Court. On May 15, 2009, the Court granted FDIC-Receiver's unopposed motion to stay this case until the earlier of July 5, 2009, or the date on which the Receiver made a determination on plaintiff's claim. By letter dated June 23, 2009, FDIC-Receiver informed plaintiff that his administrative claim was denied. After the stay expired, FDIC-Receiver filed a motion for judgment on the pleadings, and defendants First American Title Company and Fidelity National Title Company filed motions to dismiss.

## I. FDIC-Receiver's motion for judgment on the pleadings[3]

### A. FDIC-Receiver assumed WMB's liability arising out of borrower claims

As an initial matter, plaintiff challenges FDIC's standing to bring a motion for judgment on the pleadings, contending that JPMorgan Chase Bank is the "true defendant" because WMB's assets were transferred to JPMorgan Chase.

The Court rejects plaintiff's challenge to FDIC's standing. The documents filed by FDIC show that on September 25, 2008, OTS closed WMB and appointed the FDIC as Receiver for WMB. Docket No. 70, Ex. A. When the FDIC is appointed as Receiver, it succeeds to "all rights, titles, powers and privileges of" the failed institution, and may "take over the assets of and operate" the failed institution with all of the powers thereof. 12 U.S.C. §§ 1821(d)(2)(A)(i), 1821(d)(2)(B)(i). The FDIC-Receiver's powers under FIRREA include the power to transfer assets and liabilities of the failed institution through

---

[3] The Court rejects plaintiff's argument that FDIC's motion is procedurally improper; a motion for judgment on the pleadings may be filed after the pleadings are closed. *See* Fed. R. Civ. Proc. 12(c).

3

purchase and assumption agreements. *See id.* § 1821(d)(2)(G)(i).[4] On September 25, 2008, the same date that the FDIC was appointed as Receiver for WMB, the bulk of WMB's assets were transferred to JPMorgan Chase Bank pursuant to a Purchase and Assumption Agreement entered between FDIC-Receiver, the FDIC in its corporate capacity, and JPMorgan Chase Bank. *See* Docket No. 70, Ex. B (Purchase and Assumption Agreement). Article 2.5 of that Agreement expressly provides that JPMorgan Chase Bank did not assume the potential liabilities of WMB associated with claims of borrowers:

> **2.5** **Borrower Claims.** Notwithstanding anything to the contrary in this Agreement, any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower, whether or not such liability is reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, judicial or extra-judicial, secured or unsecured, whether asserted affirmatively or defensively, related in any way to any loan or commitment to lend made by the Failed Bank prior to failure, or to any loan made by a third party in connection with a loan which is or was held by the Failed Bank, or otherwise arising in connection with the Failed Bank's lending or loan purchase activities are specifically not assumed by the Assuming Bank.

*Id.* at 9. Thus, "by the terms of the P&A Agreement, JPMorgan Chase expressly disclaimed assumption of liability arising from borrower claims . . . [t]his section leaves the FDIC as the responsible party with respect to those claims." *Cassese v. Washington Mutual Bank*, 05 CV 2724 (ADS) (ARL), slip op. at 6 (E.D.N.Y. Dec. 22, 2008) (interpreting same P&A Agreement) (attached at Docket No. 70, Ex. C); *see also Payne v. Security Sav. & Loan Ass'n*, 924 F.2d 109, 111 (7th Cir. 1991) ("Absent an express transfer of liability by the [Receiver] and an express assumption of liability by Security Federal, FIRREA directs that [the Receiver] is the proper successor to the liability at issue here."). Accordingly, plaintiff's claims remain against FDIC-Receiver, and not JPMorgan Chase Bank.[5]

---

[4] The FDIC cites 12 U.S.C. § 1821(d)(2)(F)(i) for the FDIC's authority to transfer assets and liabilities. However, Section 1821 was amended on July 30, 2008, and § 1821(d)(2)(F) no longer contains subsection (i). Section 1821(G)(i)(II), which provides that "The Corporation may, as conservator or receiver – subject to clause (ii), transfer any asset or liability of the institution in default (including assets and liabilities associated with any trust business) without any approval, assignment, or consent with respect to such transfer," would appear to be the source of the FDIC's authority to transfer assets and liabilities.

[5] Plaintiff's papers suggest he intends to add JPMorgan Chase Bank as a defendant. If so, plaintiff must file a motion to amend, in which he must explain what claims he wishes to allege against JPMorgan. As discussed above, in light of the Purchase and Assumption Agreement, plaintiff cannot

4

**United States District Court**
For the Northern District of California

### B. Oral misrepresentations are barred by § 1823(e)

FDIC-Receiver moves for judgment on the pleadings on numerous grounds. First, FDIC contends that to the extent plaintiff's claims are based on alleged oral misrepresentations, the claims are barred by 12 U.S.C. § 1823(e). That section provides,

> No agreement which tends to diminish or defeat the interest of the Corporation [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement–
>
> (A) is in writing,
>
> (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
>
> (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
>
> (D) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e); *see also id*. at § 1821(d)(9)(A) (stating that, subject to exception not applicable here, any agreement that does not meet requirements of § 1823(e) shall not form the basis of, or substantially comprise, a claim against FDIC as receiver or conservator). In *W.T. Langley v. FDIC*, 484 U.S. 86 (1987), the Supreme Court held that misrepresentations made to induce a borrower to enter into a lending transaction are encompassed within the scope of an "agreement" to which the requirements of § 1823(e) attach. *Id*. at 92-93.

In response, plaintiff contends that not all of the alleged misrepresentations were oral, and he requests leave to amend to allege written misrepresentations. FDIC argues that such leave to amend would be futile because, even if plaintiff could allege written misrepresentations, plaintiff's claims (with the exception of the claim alleging violation of the January 18, 2008 order) are preempted by HOLA and its implementation regulations. The Court GRANTS FDIC's motion to the extent plaintiff's claims are based on alleged oral misrepresentations, and addresses HOLA preemption below.

---

maintain any claims against JPMorgan arising out of the origination of the loans.

5

## C. Federal preemption

Next, FDIC-Receiver contends that even to the extent that plaintiffs' claims are based on alleged written misrepresentations, all of his claims (except the seventh claim for violation of the January 18, 2008 order) are preempted by the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461, *et seq.*, and the regulations promulgated pursuant to that statute by the Office of Thrift Supervision. HOLA was enacted in 1933 to regulate federally charted savings associations. It was a "'radical and comprehensive response to the inadequacies of the existing state system,' and [is] 'so pervasive as to leave no room for state regulatory control.'" *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1004 (9th Cir. 2008) (citing *Conference of Fed. Sav. & Loan Ass'ns v. Stein*, 604 F.2d 1256, 1257, 1260 (9th Cir. 1979)). WMB was a federally chartered savings bank. Docket No. 70, Ex. A.

Pursuant to 12 U.S.C. § 1464, the OTS issued 12 C.F.R. § 560.2, which provides that certain types of state laws are preempted by HOLA. Paragraph (b) of § 560.2 provides a non-exhaustive list of such laws, including state laws that purport to impose requirements regarding:

> (2) The ability of a creditor to require or obtain private mortgage insurance, insurance for other collateral, or other credit enhancements; . . .
>
> (4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan; . . .
>
> (5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;
>
> (6) Escrow accounts, impound accounts, and similar accounts; . . .
>
> (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;
>
> (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages[.]

12 C.F.R. § 560.2(b). Paragraph (c) of § 560.2 provides that HOLA does not preempt state laws that "only incidentally affect the lending operations of Federal savings associations," including "contract and commercial law," "real property law," and "tort law." 12 C.F.R. § 560.2(c).

The OTS also describes the analytic framework courts should use when determining whether

a state law is preempted by § 560.2:

> When analyzing the status of state laws under § 560.2, the first step [is] to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then . . . the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996) (cited in *Silvas*, 514 F.3d at 1005). Applying this framework in *Silvas*, the Ninth Circuit held that California Unfair Competition Law claims based on allegations that the defendant had included "false information on its website and in every media advertisement to the California public" were preempted because they were based on the defendant's disclosures and advertising, and therefore fell within the specific type of state provision listed in § 560.2(b)(9). *Silvas*, F.3d at 1004.

Here, the SAC alleges that WMB failed to adequately disclose the terms of plaintiff's loan, SAC ¶ 8(H), imposed unlawful terms of credit, *id.* ¶ 8(O), fraudulently charged him for "forced home insurance," *id.* ¶ 8(K), and imposed unlawful late fees, *id.* ¶ 8(N). Plaintiff generally alleges that WMB made untrue or misleading statements with the intent to induce him into entering into subprime mortgages, and that WMB used appraisers to "falsely and fraudulently inflate the value of both houses." *Id.* ¶ 8(E). Applying the HOLA preemption framework, all of these claims are preempted because they seek to apply California common law to regulate areas listed in § 560.2(b), such as credit terms, disclosures about loan terms, mortgage insurance, and loan fees.

In opposition, plaintiff argues that HOLA preemption does not apply because WMB was not a federally chartered savings bank. However, the September 25, 2008 OTS Order appointing FDIC as Receiver for WMB states that WMB was a federally chartered savings bank. *See* Docket No. 70, Ex. A. Plaintiff also requests leave to amend to allege federal claims. As FDIC notes in its reply, plaintiff has not specified what federal claims he would allege, nor has he explained how those claims would be timely in light of the fact that the loans at issue were originated in 2003 and 2006.[6]

---

[6] For example, a TILA claim for damages must be brought within one year of the violation. *See* 15 U.S.C. § 1640(e) (TILA); *Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003) (failure to make disclosures required by TILA occurs on day loan documents signed)

7

Although the Court is skeptical that plaintiff can allege timely federal claims, in light of plaintiff's *pro se* status[7] and because plaintiff has not yet alleged any federal claims, the Court will GRANT plaintiff leave to amend his claims against the FDIC-Receiver. Any federal claims shall be clearly and concisely alleged, and plaintiff shall (1) identify the statutes that he is suing under, (2) state the facts supporting each claim, and (3) explain how his claims are timely. To the extent plaintiff wishes to allege any state law claims, he may do so only if they "incidentally affect the lending operations of Federal savings associations." 12 C.F.R. § 560.2(c). In order words, plaintiff may not allege any state law claims against FDIC-Receiver that fall within the purview of HOLA preemption. Finally, for all claims alleged, plaintiff should be mindful of the arguments made by all defendants in this case as to why plaintiff's previous complaints have been deficient.

### D. Seventh claim for "violation of January 18, 2008 court order"

FDIC moves to dismiss this claim because there is no independent cause of action for civil contempt. The Court agrees. "There is no such thing as an independent cause of action for civil contempt." *D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 459 (7th Cir. 1993). "Instead, civil contempt proceedings are considered to be a part of the action from which they stem, their purpose being to secure compliance with a prior court order." *Id.* (internal citation and brackets omitted). The Court DISMISSES this claim without leave to amend. If plaintiff is able to state a claim, plaintiff may raise the issue of contempt of the January 18, 2008 order with the Court at a subsequent proceeding in this case.

## II. Motions by Fidelity National Title Company and First American Title Company

Fidelity National Title Company and First American Title Company have both moved to dismiss all of plaintiffs' claims. Fidelity and First American, which are both escrow companies, raise similar contentions and thus the Court analyzes both motions together. Defendants challenge plaintiff's fraud claims as lacking particularity, and contend that plaintiff has failed to state a claim under each cause of

---

[7] Plaintiff is an attorney and has been placed on inactive status by the State Bar. *See* Docket No. 47.

action alleged. In addition, defendants correctly note that the SAC repeatedly refers to "defendants" without specifying which defendant committed which alleged act.

In response, plaintiff generally contends that all of the claims are sufficiently plead because the SAC alleges that "American Title Co. rushed through the signature on numerous loan documents and failed to give plaintiff sufficient time to read the before signing," and similarly alleges that "Fidelity is culpable for those [fraudulent] acts because their officials did not give plaintiff enough time to review the loan documents presented for signature, and rushed it through." SAC ¶ 8. Plaintiff argues that the SAC sufficiently alleges claims for fraud and breach of fiduciary duty against Fidelity and First American because they conspired with WMB to fraudulently induce plaintiff into signing predatory lending documents without reading them. In addition, although not clear from the SAC, plaintiff's oppositions to defendants' motions argue that on all other claims, he seeks to hold the escrow companies liable as agents of WMB. Thus, while plaintiff concedes that his breach of contract claims are based on the loans between him and WMB, plaintiff contends that he can allege claims for breach of contract and breach of fiduciary duty against both defendants as WMB's agent. Plaintiff also requests leave to amend.[8]

Before evaluating whether plaintiff has stated a claim against Fidelity and First American, the Court finds it instructive to review general principles governing the duties of an escrow agent. In *Lee v. Title Insurance & Trust Company*, 264 Cal.App.2d 160 (1968), the California Court of Appeal stated,

> Generally speaking, an "escrow" is a transaction in which one person, for the purpose of effecting a sale, transfer or incumbrance of real or personal property to another person, delivers any written instrument, money, evidence of title or other thing of value to a third party, the escrow holder or depository, to be held by him for ultimate transmittal to the other person upon the happening of an event or the performance of certain specified conditions. Thus, according to one view, the escrow holder is not the agent of either party; he is merely a third party depository. However, an escrow holder has also been referred to as the agent of all the principals to the escrow. But even so, the agency is not considered a general one. On the contrary, it is treated as a limited agency wherein the obligations of the escrow holder to each party are strictly in accordance with the escrow instructions given by that party. Consequently, under both views it is generally held that no liability attaches to the escrow holder for his failure to do something not required by the terms of the escrow or for a loss incurred while obediently

---

[8] Plaintiff also requests that he be allowed to conduct discovery in order to supplement his allegations. The Court finds that discovery is not appropriate. To the extent plaintiff claims that defendants defrauded him, plaintiff presumably is aware of the circumstances and particularities of the alleged fraud. Moreover, as discussed in this order, many of plaintiff's claims fail as a matter of law.

9

following his escrow instructions.

*Id*. at 162-63 (internal citations omitted); *see also Schaefer v. Manufacturers Bank*, 104 Cal.App.3d 70, 77 (1980) ("[I]t is clear that the agency which exists (and the obligation pursuant thereto) is a limited one. If the several escrow instructions create in the escrow holder an agency, it must be one limiting the obligations of the escrow holder to each party to the escrow in accordance with the instructions given by such party."). In *Lee*, the plaintiffs sued a title company and an individual escrow agent and alleged that the escrow defendants knew that other defendants were defrauding the plaintiffs in connection with the real estate transaction which the defendants were handling in escrow. *Id*. at 161. The trial court sustained a demurrer without leave to amend. In affirming the trial court, the Court of Appeal held,

> Significantly, appellants neither contend or alleged that respondents misrepresented any of the facts connected with the escrow itself nor did they allege that respondents colluded with the other defendants to defraud plaintiffs or in any way participated in or were parties to the fraudulent acts attributed to these defendants. Moreover, they did not allege that respondents were negligent in the handling of the escrow or failed to carry out their specific escrow instructions. Put abstractly, the crucial question is whether an escrow holder is under a fiduciary duty to go beyond the escrow instructions and to notify each party to the escrow of any suspicious fact or circumstance which has come to his attention before or during the life of the escrow which could conceivably affect such party even though the fact or circumstance is not related to his specific escrow instructions.

*Id*. at 163. The court held that the title company and escrow agent were under no duty to go beyond the instructions in the escrow. *Id*.

### A. Fraud

With these principles in mind, the Court turns to plaintiff's claims. Plaintiff's claim for fraud generally alleges that Fidelity and First American conspired with WMB and Long Beach to defraud plaintiff. Defendants are correct that the fraud claims do not meet the pleading requirements of Federal Rule of Civil Procedure 9(b). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations omitted) (holding Rule 9(b) applies to state law fraud claims). "A plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id*. (internal quotation

marks omitted).

In light of plaintiff's *pro se* status and request to amend the complaint the Court will grant plaintiff one final opportunity to amend his fraud claims against Fidelity and First American. In order to state a claim against these defendants, plaintiff must be able to truthfully and specifically allege (1) each defendant's role in the alleged fraud, and (2) what misrepresentations and concealments were made by defendants. It is not enough to simply allege that the title companies "rushed" plaintiff when he signed the loan documents, and that defendants "conspired" with WMB and Long Beach. Accordingly, the Court GRANTS plaintiff leave to amend the fraud claims.

### B. Breach of contract and breach of duty of good faith and fair dealing

With regard to plaintiff's claims for breach of contract and breach of the duty of good faith and fair dealing, plaintiff has not identified any authority for the proposition that plaintiff can state these claims against the title companies based on the contracts between plaintiff and WMB. As noted above, the agency created by the escrow is limited, and the escrow holder is obligated to carry out the instructions of the parties to the escrow. "If the escrow holder fails to carry out an instruction it has contracted to perform, the injured party has a cause of action for breach of contract." *Markowitz v. Fidelity National Title Co.*, 142 Cal.App.4th 508, 526 (2008). Here, plaintiff does not contend that Fidelity or First American failed to carry out any escrow instructions, or that these defendants somehow breached contracts to which Fidelity or First American were parties. The Court concludes that leave to amend these claims would be futile, and thus DISMISSES these claims without leave to amend.

### C. Breach of fiduciary duty

"An escrow holder, as a dual agent of the parties to the escrow, owes duties to the parties to the escrow. However, those duties are limited. The primary duty owed by an escrow holder is to strictly and faithfully perform the instructions given to it by the parties to the escrow." *Vournas v. Fidelity Nat. Title Ins. Co.*, 73 Cal.App.4th 668, 674 (1999); *see also Summit Financial Holdings, Ltd. v. Continental Lawyers Title Co.*, 27 Cal.4th 705, 712 (2002) ("On the other hand, an escrow holder has no general duty to police the affairs of its depositors; rather, an escrow holder's obligations are limited to faithful

11

compliance with the depositors' instructions.") (internal quotations and brackets omitted). The Court will GRANT plaintiff leave to amend the breach of fiduciary claim. If plaintiff chooses to amend this claim, he must allege how Fidelity and First American breached their fiduciary duties to plaintiff. Plaintiff may not simply allege, as he does in the SAC, that "the actions described by defendants above violate the fiduciary duty that existed between plaintiff and defendants as to both mortgage loans." SAC ¶ 30. Accordingly, the Court GRANTS leave to amend this claim.

### E. Remaining claims

Plaintiff's remaining claims are for "wrongful foreclosure," "slander of title and suit to quiet title," "declaratory relief to declare defendants WM and LB without standing to file a notice of default or to foreclose because they do not own the notes or deeds of trust as they sold them to unknown investors," "monetary damages for wilful violation of court order and OSC by Washington Mutual Bank," and "defamation: libel and slander." Although these claims are alleged against "defendants," the allegations all pertain to WMB and Long Beach, and these claims challenge, in one way or another, WMB and Long Beach's interest in plaintiff's properties and seek to prevent WMB and Long Beach from foreclosing on plaintiff's properties. Neither the SAC nor plaintiff's oppositions allege that Fidelity or First American have asserted any interest in plaintiff's properties, and instead plaintiff's oppositions state that he seeks to hold Fidelity and First American liable as WMB's escrow agent. There is no support for such a theory of liability, and accordingly the Court DISMISSES these claims without leave to amend.

### CONCLUSION

For the reasons stated above, the Court GRANTS FDIC-Receiver's motion for judgment on the pleadings, and GRANTS the motions to dismiss filed by Fidelity and First American. The Court GRANTS plaintiff one final opportunity amend the complaint in accordance with this order. If plaintiff wishes to amend the complaint, he must do so no later than **November 20, 2009**. (Docket Nos. 37, 42, & 50). As the October 30, 2009 hearing and case management conference are vacated, the Court FINDS MOOT plaintiff's request to appear at the case management conference by telephone. (Docket No. 79).

After defendants respond to plaintiff's amended complaint, the Court will set a further schedule in this case.

**IT IS SO ORDERED.**

Dated: October 28, 2009

SUSAN ILLSTON
United States District Judge